126 So.2d 51 (1960)
Jerry R. ENGLAND et al.
v.
LOUISIANA STATE BOARD OF MEDICAL EXAMINERS et al.
No. 5143.
Court of Appeal of Louisiana, First Circuit.
December 19, 1960.
Rehearing Denied January 30, 1961.
Certiorari Denied February 15, 1961.
J. Minos Simon, Lafayette, Floyd J. Reed, New Orleans, Russell Morton Brown, Washington, D. C., for appellants.
Adams & Reese, Ellis, Lancaster & King, Robt. E. LeCorgne Jr., Phelps, Dunbar, Marks, Claverie & Sims, Blake West, Philip E. Henderson, New Orleans, for appellees.
Before ELLIS, LOTTINGER, JONES, HERGET and LANDRY, JJ.
HERGET, Judge.
An action for declaratory judgment and injunction was filed in the United States District Court for the Eastern District of Louisiana by plaintiffs-appellants seeking to have declared unconstitutional the requirements as a prerequisite of the State of Louisiana for the practice of their profession, chiropractic, that they have diplomas from colleges approved by the American Medical Association and further seeking to have declared illegal the requirement that knowledge of surgery and materia medica *52 bear a reasonable relation to chiropractic. Plaintiffs appealed from the judgment of the United States District Court dismissing their complaint and in the case entitled England et al. v. Louisiana State Board of Medical Examiners et al., 259 F.2d 626, the United States Court of Appeals, Fifth Circuit, with Judges Rives and Brown concurring and Judge Wisdom dissenting, reversed the decision and remanded same with directions. An application for a rehearing was made by appellees and in the case of England et al. v. Louisiana State Board of Medical Examiners et al., 5 Cir., 263 F.2d 661, a petition for rehearing was denied with Judge Wisdom dissenting.
Upon remand of the case before a three judge court of the Eastern District composed of Judges Jones, Christenberry and Wright, that Court, on January 5, 1960, 180 F.Supp. 121, 124, entered an order "* * * staying further proceedings in this Court until the courts of the State of Louisiana shall have been afforded an opportunity to determine the issues here presented, and retaining jurisdiction to take such steps as may be necessary for the just disposition of the litigation should anything prevent a prompt state court determination."
Following the order of the United States District Court, plaintiffs, appellants herein, filed in the Nineteenth Judicial District Court this action for a declaratory judgment against the Louisiana State Board of Medical Examiners seeking a preliminary injunction restraining and prohibiting the defendants, Louisiana State Board of Medical Examiners, Rhett McMahon, President thereof, and Edwin Lawson, Secretary thereof, and its agents, servants and employees or successors in office, from denying or depriving plaintiffs or any of them their rights and privileges as citizens of the United States and of the State of Louisiana, or the equal protection of laws secured to them by the Constitution and Laws of the United States or their civil rights, on the sole basis or classification of chiropractors, or otherwise, or from making any other distinction as to them because they are chiropractors or from enforcing or executing the provisions of LSA-R.S. 37:1261 et seq., or from instituting or maintaining all actions at law or in equity, civil or criminal, now pending in any of the courts of the State of Louisiana and heretofore commenced by them or from commencing the same hereafter against plaintiffs under or pursuant to the terms and conditions of the Statute complained of in these proceedings and further enjoining them from taking any further or any other actions, civil or criminal, in any court in pursuance of said Statute, in connection with the enjoyment and exercise of the rights, privileges and immunities of plaintiffs anent their professional skills and capacities or opportunities and privileges.
A petition of intervention was filed on behalf of Louisiana State Medical Society.
After the submission of the case on the application for a preliminary injunction, stipulation was entered into by and between counsel for plaintiffs and defendants that the case be submitted to the Court on the merits for a permanent injunction upon the same evidence introduced on the preliminary injunction, and there was judgment thereon dismissing the suit of plaintiffs at their costs. It is from this judgment that plaintiffs have appealed to this Court.
In the decision of the Fifth Circuit, 259 F.2d 626, at page 627, supra, the Court said:
"We are not called on at this time to say whether chiropractors should be admitted to practice in Louisiana, but the question is whether they are entitled to an opportunity to prove that the State's denial of their claimed right to practice an allegedly useful profession is so arbitrary and unreasonable as to amount to a denial of due process or of the equal protection of the laws under the Fourteenth Amendment. It is certainly true that the State is not bound to recognize every peculiar theory or school of medicine. Without doubt it is reasonable for the state to outlaw witch doctors, voodoo queens, *53 bee stingers, and various other cults which no reasonably intelligent man would choose for the treatment of his ills, but it would certainly be arbitrary to exclude some, if not all, of the following classes which Louisiana does admit to practice: dentists, osteopaths, nurses, chiropodists, optometrists, pharmacists, and midwives. Just where is the dividing line? Under all of the cases, we think it is that the State cannot deny to any individual the right to exercise a reasonable choice in the method of treatment of his ills, nor the correlative right of practitioners to engage in the practice of a useful profession." (Italics by the Court.)
It is to be noted that this suit is not by individuals seeking the right to exercise a reasonable choice in the method of treatment of theirs ills but is brought by plaintiffs, chiropractors, seeking the right to engage in the practice of an allegedly useful profession, chiropratic.
On rehearing, 263 F.2d 661, at page 674, supra, the Court said:
"We give full recognition to the State's power to regulate, reasonably and rationally, all facets of the medical field, even to excluding certain professions or specialists or schools by subjecting them to the rigid requirements of medical doctors or by expressly outlawing them. But the State cannot outlaw an allegedly useful and lawful profession without a `reasonable' or `rational' basis for so doing. The plaintiffs say no such basis exists and the defendants say it does. We must, upon motion to dismiss (treated as summary judgment), take the plaintiffs' allegations as true. Thus taken, they make out a prima facie case under existing law. That is the limit to our holding.
"Indeed, the burden upon the plaintiffs is great, if not insurmountable. They must show that the Act as administered `has no rational relation' to the regulation of chiropractic and `therefore is beyond constitutional bounds.' Williamson v. Lee Optical Company, supra, 348 U.S. 483, 491, 75 S.Ct. 461, 466, 99 L.Ed. 563. For such a determination, it is immaterial whether chiropractic is considered as a school or cult or theory or specialty or profession. That is for the legislature to determine if the plaintiffs prevail in this suit. The petition for rehearing is Denied."
In his dissenting opinion, Judge Wisdom, 263 F. at page 675, said:
"I cannot see what purpose will be served by giving the plaintiffs a day in court to prove that chiropractic may be a useful profession and that chiropractors are not surgeons. No one denies that chiropractic may be a useful profession. Or that some intelligent persons go to chiropractors' for treatment. Or that chiropractors whose medical activities are restricted by law to adjusting subluxated vertebra by thrusting movements of the hands have no need for a knowledge of surgery and materia medica. To give the plaintiffs a day in Court for the purpose of proving these undisputed facts is to decide the case now for the plaintiffs. It amounts to holding the Louisiana Medical Practice Act arbitrary, unreasonable, and unconstitutional on its face." (Italics by the Court)
In the case of Louisiana State Board of Medical Examiners v. Beatty et al., 220 La. 1, 55 So.2d 761 the Supreme Court of this State had before it the resolution of every contention made by the plaintiffs herein and that Court determined adversely the contentions herein. It being therein judicially decreed that the defendants, chiropractors, were practicing medicine within the meaning of the Medical Practice Act; that the Medical Practice Act is constitutional; that the exemption of certain classes or persons such as osteopaths and dentists from the provisions of the law did not result in an unreasonable discrimination *54 and did not affect the constitutionality of the act because it did not exempt chiropractors; that the provision of the Medical Practice Act that a person present to the Board of Medical Examiners a diploma from a college in good standing and that the Medical Board determine what is or what is not a college in good standing did not render the statute unconstitutional; and that the Medical Practice Act is not unconstitutional on the ground that it takes from chiropractors their constitutional right to practice their profession without due process of law. We are in accord with this decision.
In Louisiana State Board of Medical Examiners v. Fife et al., 162 La. 681, 111 So. 58, 54 A.L.R. 594, the Supreme Court of our State decreed that a chiropractor was practicing medicine within the intendment of Act 56 of 1914 as amended and reenacted by Act 54 of 1918 (now incorporated in our statutes as LSA-R.S. 37:1261 et seq.) though not using drugs or surgical instruments and maintained that though the State could not prohibit the practice of medicine and surgery, it had the authority to regulate same within reasonable bounds and define the qualifications of the practitioners; that a chiropractor was not deprived of his liberty and property without due process of law when he was required, like others practicing medicine, to first qualify as to materia medica and surgery even though they are not used in the chiropractic system; that the Legislature was not bound to recognize every school of medicine and deal with it as such and that the failure to exempt a chiropractor from the provisions of the act was not discriminatory. The Fife case is the leading case in Louisiana. We are in accord with this decision.
In commenting on the Fife case in England et al. v. Louisiana State Board of Medical Examiners, 263 F.2d 662, at page 670 (Rehearing supra), the Court said:
"The case which the appellee-Board says is dispositive of the case at bar is Louisiana Board of Medical Examiners v. Fife, 1927, 162 La. 681, 111 So. 58, 54 A.L.R. 594, * * *."
In the England case, 259 F.2d 626, at page 627 (supra), the Court said:
"The case closest in point to that now presented is Louisiana State Board of Medical Examiners v. Fife, 1926, 162 La. 681, 111 So. 58, 54 A.L.R. 594, affirmed in a Per Curiam opinion on May 2, 1927, 274 U.S. 720, 47 S.Ct. 590, 71 L.Ed. 1324. In the thirty odd years since that decision was rendered, we judicially know that the healing art in general has made further enormous progress away from the ancient days when barbers did the blood letting. Can we say without hearing the evidence that chiropractice is no more entitled to recognition today than it was thirty odd years ago? It is claimed that the practice of chiropractic has now been legalized in forty-four of the States, in Hawaii, and in the District of Columbia, and that respectable colleges of chiropractic have been founded with courses comparable in length and claimed to be equal in quality to the medical colleges. It is not denied that the state may regulate, within reasonable bounds, the practice of chiropractic for the protection of the public health; but it is claimed that the requirements of a diploma from a college approved by the American Medical Association and a knowledge of surgery and materia medica bear no reasonable relation to the practice of chiropractic. Without hearing the evidence, we cannot say that those claims are untrue, or that a reasonable man might not intelligently choose a chiropractor for the treatment of some particular ailment. We hold simply that the plaintiffs are entitled to a day in court, to an opportunity to prove their case. The judgment is therefore reversed and the cause remanded for further proceedings not inconsistent with this opinion."
*55 Judge Wisdom, in his dissenting opinion in this case (259 F.2d 626, at page 632), said:
"The leading case in Louisiana is Louisiana State Board of Medical Examiners v. Fife, 1926, 162 La. 681, 111 So. 58, 61, 54 A.L.R. 594; 1927, 274 U.S. 720, 47 S.Ct. 590, 71 L.Ed. 1324. In the Fife case the Board sued to enjoin certain chiropractors from practicing medicine without a license. The defendants contended that the Medical Practice Act was unconstitutional because: (1) chiropractors were required to take materia medica and surgery, and since these subjects had no relation to chiropractic the Act suppresses chiropractors and violates due process; (2) chiropractors are not exempt from the Act as are dentists, osteopaths, and pharmacists, and this denied chiropractors the equal protection of laws guaranteed by the 14th amendment. The Supreme Court of Louisiana held the Medical Practice Act constitutional. In construing the statute the Louisiana Court makes the important point: `* * * While materia medica and surgery are not used in the chiropractic system, still they, as well as the other subjects required by the act, as amended, bear a relation to the practice of medicine as a general science and that, in view of the fact that the Legislature is not bound to recognize every school of medicine, and deal with it as such, is sufficient to prevent the act from being unconstitutional.' The Fife case held that the Legislature could in its discretion, exempt certain groups and provide for them under separate statutes, and that those whom the Legislature did not choose to exempt had to comply with the provisions of the Act if they were practicing medicine. `* * defendants cannot complain, on the ground of being unjustly discriminated against, because the Legislature has not deemed proper to recognize their school of medicine, and make special provision for those desiring to practice that system, by prescribing a course of study in accord with the theories which it holds for restoring health. * * * If defendants wish to treat the sick in accordance with the theories held by them, they must comply first with the Act of 1914, as amended. * * *'"
It is conceded that the Legislature of the State is not bound to recognize and license every exponent of a theory or practice for the treatment of the ills of the people and it is our view, and we feel same to be the view expressed by the majority in the England case, supra, that upon proof of the usefulness of a profession under the Fourteenth Amendment of the Constitution of the United States the arbitrary deprivation of one to so engage in such profession, whether by failure to license or by denial through other administrative measures, results in a violation of the constitutional rights guaranteed to the individual practitioner. We do not believe that it was the intention of the majority to hold, as Judge Wisdom in his dissent indicated, that upon proof that chiropractic may be a useful profession, the denial of the right to practice would be a violation of the constitutional rights of the practitioner.
In the suit in the Federal Court, the Court of Appeal for the Fifth District remanded the case to the district court for the purpose of permitting the plaintiffs, who are chiropractors, to prove that chiropractic is such a useful profession or calling that the plaintiffs could not be constitutionally deprived of their right to practice chiropractic in the manner and form claimed to be admitted by the Louisiana Legislature and by the State Board of Medical Examiners.
This Court nor any other court possesses the authority to license chiropractors or any other profession and such matters are peculiarly within the province of the Legislature, subject only to the exercise of such authority within the constitutional bounds.
Inasmuch as heretofore pointed out we maintain the constitutionality of the Medical *56 Practice Act, together with the administration thereof by the Louisiana State Board of Medical Examiners and further hold that chiropractic comes within the provisions of the Medical Practice Act, and that the Legislature in refusing to license them as such has not denied to the chiropractors a constitutional right to practice their profession, without due process of law, we have determined all the contentions of plaintiffs adversely. We believe the remedy of plaintiffs' complaints lie within the province of the Legislature and not the courts. It is to be noted that in the forty-six states in which chiropractic is permitted, the right to do so is granted by special legislative acts.
In 43 Words and Phrases, in the 1960 Cumulative Annual Pocket Part, we find under the definition of "useful""Word `useful' is broad and comprehensive, and its interpretation is largely a matter of judgment. Hanrahan v. Corrou, 12 N.Y.S. 2d 536, 541, 170 Misc. 922."
And in Webster's New International Dictionary, Second Edition, we find the word "profession" defined: "4.a The occupation, if not purely commercial, mechanical, agricultural, or the like to which one devotes oneself; a calling in which one professes to have acquired some special knowledge used by way either of instructing, guiding, or advising others or of serving them in some art; as, the profession of arms, of teaching, or chemist. The three professions, or learned professions, is a name often used for the professions of theology, law, and medicine."
On the trial in the lower court of the application for injunction, there was offered by plaintiffs affidavits of individuals who proclaimed to have received beneficial treatment by chiropractors, together with affidavits of insurance companies and employers that they recognized chiropractic charges as well as opinions by chiropractors, and doctors to the effect that chiropractic was a useful profession. On the other hand, defendants and intervenors offered statements of doctors to the effect that chiropractic is detrimental to the health of the general public; that the only thing new in chiropractic is its claims, and scientific investigation has proven beyond any reasonable doubt that chiropractic has failed to establish its concept on any sound basis; that the manipulation on the vertebral column is useless in most cases, dangerous in some, and without any therapeutic effect in all cases, unless it be purely psychological; that there is no condition of subluxation or misalignment of the spinal vertebrae in the sense used by the chiropractic practitioner; that if such condition, by reason of accident or disease, actually is found, it requires skilled surgery; and that it is not possible to reduce subluxations or misalignment of the vertebrae and thus relieve pressure of the nerve branches by manipulation of the hand and that there is no pathological basis whatsoever for the theory of chiropractic, and it is silly to allude to it as a science. The Director of the Department of Anatomy of the University of Chicago opined: "In a period of 29 years, during which time I have been Director of this Department, we have never found in our dissecting rooms a single instance in which the foramen or aperture between the vertebrae through which the nerve branches issue from the spinal cord have been so narrowed as to cause pressure upon nerves."
We believe, therefore, that the question of whether or not any beneficial results may be obtained by treatment of chiropractic is, to say the least, highly controversial and the question as to the licensing of a person to practice chiropractic is one that addresses itself to the Legislature and their failure to license chiropractic, as such, is one peculiarly within their wisdom and we are not prepared to say that a denial of Plaintiffs to practice chiropracticwhich has been defined: "* * * `the philosophy, science, and art of things natural, and a system of adjusting the subluxated vertebrae of the spinal column, by hand, for the restoration of health.' * * *.,"either by *57 requiring the practitioner to be licensed under the Medical Practice Act of the State of Louisiana or because of the failure of the Legislature to recognize such profession as a useful profession, and thereby license them as such, is arbitrary and, therefore, unconstitutional and, in consequence of which, we are of the opinion that the judgment of the Trial Court is correct and for these reasons is affirmed.
Judgment affirmed.