Jerry R. ENGLAND et al., Plaintiffs,

v.

LOUISIANA STATE BOARD OF MEDI-
CAL EXAMINERS et al., Defendants.

Civ. A. No. 9292–A.

United States District Court
E. D. Louisiana,
New Orleans Division.

Nov. 9, 1965.

Simon, Trice & Mouton, J. Minos Si-
mon, Lafayette, La., Reed, Reed, Reed &
Garvey, Floyd J. Reed, New Orleans, La.,
for plaintiffs.

Adams & Reese, W. Ford Reese, Robert
F. LeCorgne, Jr., Joel L. Borrello, Thom-
as Wyllie, New Orleans, La., for defend-
ants.

Phelps, Dunbar, Marks, Claverie &
Sims, Ashton Phelps, Blake West, New
Orleans, La., for intervenor, Louisiana
State Medical Soc.

Before JONES and WRIGHT *, Circuit
Judges, and CHRISTENBERRY, District
Judge.

* Of the District of Columbia Circuit, sitting by designation.

**J. SKELLY WRIGHT, Circuit Judge.**

Plaintiffs are chiropractors practicing their profession in the State of Louisiana. In this litigation [1] they seek an injunction prohibiting the Louisiana State Board of Medical Examiners from enforcing the licensing provisions of the Louisiana Medical Practice Act [2] against them. After a full trial on the merits, we conclude that the application for injunction must be denied and this case dismissed.

The Louisiana Medical Practice Act has a general licensing provision applicable broadly to practitioners of the healing arts. It first defines "the practice of medicine, surgery, or midwifery" as "the holding out of one's self to the public as being engaged in the business of diagnosing, treating, curing, or relieving any bodily or mental disease, condition, infirmity, deformity, defect, ailment, or injury in any human being other than himself whether by the use of any drug, instrument or force, whether physical or psychic, or of what other nature, or any other agency or means; or the examining, either gratuitously or for compensation, of any person or material from any person for such purpose whether such drug, instrument, force, or other agency or means is applied or used by the patient or by another person * * *." La.R.S. 37:1261.

After thus defining its coverage, the Louisiana Medical Practice Act then prohibits any person from practicing medicine unless he possesses a certificate issued under the Act. Qualifications for obtaining a certificate, in addition to being a citizen of the United States, of good moral character and 21 years of age or over, are that the applicant must present to the Louisiana State Board of Medical Examiners, defendant herein, a diploma "from a college in good standing of any sect teaching medicine or the healing art" and "[p]ass an examination before the Board upon the following: Anatomy, Physiology, Chemistry, Physical Diagnosis, Pathology and Bacteriology, Hygiene, Surgery, Theory & Practice of Medicine, Materia Medica, Obstetrics, and Gynecology." La.R.S. 37:1271 (1964).

In addition to the Medical Practice Act, the Legislature of Louisiana has passed special statutes outlining qualifications and licensing procedures for the practice of certain specialities related to medicine such as dentistry,[3] optometry,[4] pharmacy,[5] osteopathy,[6] podiatry,[7] homeopathy,[8] and nursing.[9] Persons qualifying under one of these special acts are exempted from the requirements of the Medical Practice Act. Thus any person practicing a healing art in Louisiana must qualify and be licensed under one of the special statutes or under the gen-

---

1. Thanks to the abstention doctrine, this case has been a long time making its way through the courts. In 1957 this court, acting through one judge, dismissed the complaint. The Fifth Circuit reversed, one judge dissenting. England v. Louisiana State Board of Medical Examiners, 5 Cir., 259 F.2d 626 (1958), rehearing denied, 263 F.2d 661, cert. denied, 359 U.S. 1012, 79 S.Ct. 1149, 3 L.Ed.2d 1036 (1959). On remand, this three-judge court abstained. England v. Louisiana State Board of Medical Examiners, E.D. La., 180 F.Supp. 121 (1960). The First Circuit Court of Appeal of Louisiana affirmed the judgment of the state trial court against plaintiffs and the Supreme Court of Louisiana denied an application for a writ of certiorari. England v. Louisiana State Board of Medical Examiners, La.App., 126 So.2d 51 (1960). This court then dismissed the complaint for the

second time on the ground that it was without authority to review the state court action. England v. Louisiana State Board of Medical Examiners, E.D.La., 194 F.Supp. 521 (1961). The Supreme Court reversed and remanded for a trial in the federal court on the merits of the constitutional issue. England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964).

2. La.R.S. 37:1261 et seq. (1964).

3. La.R.S. 37:751 et seq. (1964).

4. La.R.S. 37:1041 et seq. (1964).

5. La.R.S. 37:1171 et seq. (1964).

6. La.R.S. 37:1111 et seq. (1964).

7. La.R.S. 37:611 et seq. (1964).

8. La.R.S. 37:1311 et seq. (1964).

9. La.R.S. 37:911 et seq. (1964).

eral licensing provisions of the Medical Practice Act.

There is no special statute covering chiropractic. As interpreted by the Board, persons desiring to practice chiropractic in the State of Louisiana must qualify under the provisions of the Medical Practice Act, including the provision requiring a diploma from a medical school and a test before the Board in, among other things, *materia medica* and surgery. It is the position of the plaintiffs that, as chiropractors, they have no concern with *materia medica* and surgery and, consequently, should not be required, in order to practice their profession, to graduate from an approved medical school and be proficient in *materia medica* and surgery. Chiropractic, according to the plaintiffs, is an independent, complete, drugless healing art, basically unrelated to medicine, and to require them to qualify under the Medical Practice Act when other healing arts are relieved of this responsibility is to work an invidious discrimination against them in violation of the Equal Protection and Due Process Clauses of the Fourteenth Amendment.

■ As broadly defined by its proponents, chiropractic is a healing art designed to relieve human ailments by manipulation and adjustment of the spine. It is chiropractic doctrine that most, if not all, human ailments result from a slight misalignment, or subluxation, of contiguous vertebrae. This subluxation tends to impinge on nerves emanating from the spinal cord through apertures in the vertebrae. As a result of the impingement, the innervation to the parts of the body served by the impinged nerve is abnormally altered, and such parts become diseased or predisposed to disease. The realignment of these subluxated vertebrae through manipulation of the spine by the chiropractor removes the impingement and restores the nerve function to the diseased parts of the body.[10] Chiropractic science postulates that the commonly accepted causes of disease, such as viruses and germs, are merely secondary factors acting on parts of the body already predisposed to disease by nerve impingement. Thus disease results from a lack of resistance to the viruses and germs which are always present in the body.[11]

There seem to be two schools of chiropractic. The members of the International Chiropractic Association apparently believe that there is one cause of disease—subluxation of the vertebrae—and one cure—manipulation of the spine to relieve the subluxation. The American Chiropractic Association, while not as absolute in its approach to the problem of disease, nevertheless feels that chiropractic is a complete and independent healing art which not only can prevent disease, but can cure disease if the manipulation of the spine begins in time.

With one possible exception,[12] all of the legal issues presented in this case were decided adversely to plaintiffs in Louisiana State Board of Medical Examiners v. Fife, 162 La. 681, 111 So. 58, 54 A.L.R. 594 (1926), affirmed, 274 U.S. 720, 47 S.Ct. 590, 71 L.Ed. 1324 (1927). It was there decided, under the very Act in suit, that chiropractors are covered by the Medical Practice Act and that the *materia medica* and surgery requirement as ap-

---

10. Janse, Houser & Wells, Chiropractic Principles and Technic, Chapter II (2d ed. 1947); see also Logan, Basic Methods 5–14 (Logan & Murray ed. 1950).

11. JANSE, HOUSER & WELLS, op.cit.supra Note 10, Chap. IV; see also LOGAN, op. cit. supra Note 10, 216–217.

12. The court's opinion in Fife does not explicitly treat the "diploma from a college in good standing" requirement of the Act or the delegation of the determination of "good college" to the Board. Apparently this issue was not pressed because of the then recent decision in Graves v. State of Minnesota, 272 U.S. 425, 47 S.Ct. 122, 71 L.Ed. 331 (1936), which specifically upheld against constitutional attack a similar requirement in a Minnesota statute. See Douglas v. Noble, 261 U.S. 165, 43 S.Ct. 303, 67 L.Ed. 590 (1923); Dent v. State of West Virginia, 129 U.S. 114, 9 S.Ct. 231, 32 L.Ed. 623 (1889). See also Louisiana State Board of Medical Examiners v. Beatty, 220 La. 1, 55 So.2d 761 (1951).

plied to them is constitutionally unassailable. Fife also held that the fact that other Louisiana statutes exempted certain medical specialities from compliance with the general licensing requirements of the Medical Practice Act did not violate the Equal Protection Clause.

This court originally dismissed this case on the authority of Fife. The Fifth Circuit Court of Appeals, however, in reversing that ruling, stated that in the 30-odd years since Fife, enormous progress has been made in the healing arts, and that it was unable to say, without a full evidentiary hearing on the merits, whether chiropractic is "no more entitled to recognition today than it was thirty odd years ago." England v. Louisiana State Board of Medical Examiners, supra Note 1, 259 F.2d at 627. The court pointed out that chiropractic had been legalized as such in 44 (now 46) states and the District of Columbia, and that such requirements as a diploma from a college approved by the American Medical Association may at this time be an unconstitutional imposition on the rights of chiropractors. In remanding for a trial on the merits, the court recognized that "the burden upon the plaintiffs is great, if not insurmountable. They must show that the Act as administered 'has no rational relation' to the regulation of chiropractic and 'therefore is beyond constitutional bounds.'" England v. Louisiana State Board of Medical Examiners, supra Note 1, 263 F.2d at 661.

■■ Our mandate then, after hearing the evidence, is to determine whether in 1965 it is irrational and ureasonable for the Louisiana Legislature still to require chiropractors to comply with the licensing provisions of the Medical Practice Act before being allowed to practice their profession in Louisiana. We approach resolution of this problem fully cognizant of "the principle that the State is primarily the judge of regulations required in the interest of public safety and welfare, and its police statutes may only be declared unconstitutional where they are arbitrary or unreasonable attempts to exercise the authority vested in it in the public interest." Graves v. State of Minnesota, supra Note 10, 272 U.S. at 428, 47 S.Ct. at 123.

At the outset it should be noted that the laws of the State of Louisiana do not prohibit the practice of chiropractic. As a matter of fact, as this record shows, one chiropractor complied with the provisions of the Medical Practice Act and subsequently practiced chiropractic in the state. The question here is: May Louisiana require a chiropractor to obtain what is in effect a medical education from an approved medical school before he may practice his profession in the state?

It is clear that the Louisiana Legislature is fully cognizant of the problems which confront the chiropractor with reference to compliance with the Medical Practice Act. Time and again efforts have been made by the chiropractors to have a special statute passed which would provide a licensing procedure for them similar to those provided for other specialties in the healing arts. What has been the motivation of the Legislature in refusing to pass such legislation is, of course, a matter of conjecture. Plaintiffs suggest it is that the lobby of the Louisiana Medical Association is more powerful and effective than theirs. This may be true. It may also be true that, since chiropractic claims to be a complete and independent healing art capable of curing almost all kinds of disease, the Legislature may have felt that the requirement of a foundation in *materia medica* and surgery, even for chiropractors, would be a protection to the public. Perhaps also the Legislature concluded that a knowledge of these subjects would assist chiropractors in diagnosing disease and determining in specific cases whether or not the disease was too far advanced for successful treatment by chiropractic ministrations. This is not an unreasonable or irrational consideration, because the plaintiffs' own evidence indicates that the teaching of one school of chiropractic, that favored by the American Chiropractic Association, suggests reference of certain cases to medical practitioners where the disease is no longer subject to successful treat-

ment by manipulation of the spine. The Legislature, of course, is certainly cognizant of the fact that, with respect to some diseases, delay in proper treatment may be fatal.

The Legislature may also have been impressed by the fact that there is no school in the United States accredited to teach chiropractic, even by the accrediting committee of the American Chiropractic Association. In fact, the Director of Education of the American Chiropractic Association states:

"None of the ACA colleges is fully 'Accredited' as yet. For none meets all of the standards. As was indicated earlier in this report, this is in no small part due to lack of available funds for upgrading purposes.

"The Accreditation Committee [of the American Chiropractic Association] has been guided not only by its strict interpretation of the Standards, but by what is required for accreditation of schools of podiatry, optometry, nursing and osteopathy. All of these kindred or associated fields in the healing arts have had their accrediting agencies accepted by the U. S. Office of Education, hence they furnish a useful guideline for our efforts toward the same ends." Anderson, Report: The Issues Confronting the Delegates and Members of the American Chiropractic Association as They Seek to Solve the Problems of Chiropractic Education 32 (1964).

If the education obtained in chiropractic schools does not meet the standards of the American Chiropractic Association and the United States Office of Education, it may well be that the Legislature of Louisiana felt that in the public interest a diploma from an approved medical school should be required of a chiropractor before he is allowed to treat all the human ailments chiropractors contend can be cured by manipulation of the spine. Other considerations, suggested by the record in this case, possibly affecting the legislative judgment could be stated. Suffice it to say that on this record we are unable to hold that the Legislature of Louisiana has acted irrationally and unreasonably in the premises.

It may well be that chiropractic is a useful profession and that the requirement of a medical education for chiropractors is not in the public interest. But the "balanc[ing of] the advantages and disadvantages of [this] requirement," Williamson v. Lee Optical Co., 348 U.S. 483, 487, 75 S.Ct. 461, 464, 99 L.Ed. 563 (1955), is for the legislature. And, ordinarily, "[f]or protection against abuses by legislatures the people must resort to the polls, not to the courts." Munn v. State of Illinois, 94 U.S. (4 Otto) 113, 134, 24 L.Ed. 77 (1876). For "[t]he day is gone when this Court uses the Due Process Clause of the Fourteenth Amendment to strike down state laws, regulatory of business and industrial conditions, because they may be unwise, improvident, or out of harmony with a particular school of thought." Williamson v. Lee Optical Co., supra, 348 U.S. at 488, 75 S.Ct. at 464.

We are not unaware that the state in undertaking its obligation to protect the public must adopt those means which trench least on fundamental private rights, including the right to practice one's profession. "[E]ven though the governmental purpose be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved." Shelton v. Tucker, 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231 (1960). But there has been no showing here that the state has done more than is necessary to protect the health of its citizens. A difference of opinion as to whether one who purports to practice a complete healing art should have a medical education is not proof of unreasonable disregard of plaintiffs' rights.

Injunction denied and complaint dismissed.