Dear Representatives Vaughn
¶ 0 The Attorney General has received your letter asking for an official opinion addressing the following question:
Is 72-6(E)(7) of the Insurance Department's Code of OklahomaRegulations in violation of 36 O.S. 6055-36 O.S. 6057 (1988),either as these statutes exist now or as amended by House BillNo. 1102 of the 43rd Oklahoma Legislature, and especially inregard to medical treatment rendered by chiropractors?
¶ 1 The statutes referred to in the question were first enacted into law in 1971. See Laws, 1971, c. 183, 5-7. They have often been referred to as "freedom of choice" laws in the context of the provision of medical services. They were described in the title of the 1971 act as:
 providing if the terms of any individual, franchise, group or blanket accident and health insurance policy, plan, agreement or service contract cover services within the lawful scope of practice of any practitioner licensed under the healing arts, then such services may be performed by any person licensed to do so regardless of the branch of the healing arts; providing for freedom of choice as to where such services may be performed; providing for free choice of licensed practitioner.
¶ 2 These statutes were amended by House Bill No. 1102 of the First Regular Session of the 43rd Legislature, signed into law by the Governor on April 3, 1989, but do not become effective by the Bill's own terms until November 1, 1989. Inasmuch as the new amendments and any prior amendments do not affect this Opinion, we quote the latest amended version of the statutes:
36 O.S. 6055:
 A. For any individual, group, blanket, franchise policy, insurance trust, nonprofit contract or agreement whatever, providing accident or health benefits hereafter renewed or issued for delivery from out of Oklahoma or in Oklahoma by any insurer, whether a stock or mutual insurance company, medical service corporation or association, nonprofit hospital service and medical indemnity corporation, self-insured trust, nonprofit group, or any other type of insurer whatever, and covering an Oklahoma risk, the services and procedures may be performed by any practitioner selected by the insured, or his parent or guardian if the insured is a minor, provided that the practitioner is duly licensed under the laws of this state to perform such services or procedures approved by the appropriate board of examiners. The practitioner, at the option of the insurer, may be compensated when benefits are assigned and on file and claims are processed on standard American Medical Association forms and a duplicate copy of the bill has been sent to the insured. The practitioner shall be equally compensated for such services and procedures on the basis of charges prevailing in the same community for similar services and procedures to similarly ill or injured persons regardless of the branch of the healing arts to which the practitioner may belong, provided such profession or practitioner does not permit false and fraudulent advertising or such profession or practitioner does not aid or abet the insured to violate the terms of the contract or agreement.
 B. Nothing in this section shall prohibit a practitioner from contracting with a payor, payers or insurers for alternative levels or methods of payment.
 36 O.S. 6056:
 Services and procedures covered by the terms of 36 O.S. 6055 of this title, may be performed at any hospital where such practitioner is authorized to practice, doctor's office or clinic, at the choice of the insured, or his parent or guardian if the insured is a minor, and the practitioner who is performing such services and procedures.
 36 O.S. 6057:
 Any provision, exclusion or limitation denying an insured, or his parent or guardian if the insured is a minor, the free choice of any practitioner or the use of any hospital where the practitioner is authorized to practice, doctor's office or clinic shall, to the extent of the denial, be void, but such voidance shall not affect the validity of the other provisions of the policy, plan or agreement.
¶ 3 The pertinent part of the Insurance Department's rule, codified as part of 72-6 of the Department's "Oklahoma Regulations," reads as follows:
 E. No policy shall limit or exclude coverage by type of illness, accident, treatment or medical condition, except as follows:
* * *
 (7) care in connection with the detection and correction by manual or mechanical means of structural imbalance, distortion, or subluxation in the human body for purposes of removing nerve interference and the effects thereof, where such interference is the result of or related to distortion, misalignment or subluxation of, or in the vertebral column.
¶ 4 A rule or regulation may only implement the law and must be in furtherance of the intention of the Legislature. Burrell v.Turner Corp. of Oklahoma, Inc., 431 F. Supp. 1018 (N.D.Okla. 1977). If there is a conflict between a statute and a rule, the statute must prevail. Arkansas Louisiana Gas Co. v. Travis,682 P.2d 225 (Okla. 1984). In order to determine if there is a conflict between the above rule and statutes we must look further into the nature of the practice of chiropractic.
¶ 5 The statutory definition of chiropractic is found at 59O.S. 164 (1988), as follows:
 Chiropractic is defined to be the science that teaches health in anatomic relation and disease or abnormality in anatomic disrelation, and includes hygienic and sanitary measures incident thereto.
¶ 6 We have found no court opinions construing or interpreting this statutory definition, but we have found many other definitions of chiropractic. Harris v. State, 92 So.2d 217, 219
(Miss. 1957), for example, says that chiropractic is "a drugless method of treating human ailments, chiefly by manipulation of the spinal column with the hands." In England v. Louisiana StateBoard of Medical Examiners, 246 F.Supp. 993 (E.D.La. 1965), the U.S. District Court said:
 As broadly defined by its proponents, chiropractic is a healing art designed to relieve human ailments by manipulation and adjustment of the spine. It is chiropractic doctrine that most, if not all, human ailments result from a slight misalignment, or subluxation, of contiguous vertebrae. This subluxation tends to impinge on nerves emanating from the spinal cord through apertures in the vertebrae. As a result of the impingement, the innervation to the parts of the body served by the impinged nerve is abnormally altered, and such parts become diseased or predisposed to disease. The realignment of these subluxated vertebrae through manipulation of the spine by the chiropractor removes the impingement and restores the nerve function to the diseased parts of the body.
246 F.Supp. at 995. See also, State Board of Medical Examinersv. McHenery, 69 So. 2d 592 (La.App. 1953); State v. Grayson,92 N.W.2d 272 (Wis. 1958); and, generally, 7 Words and Phrases (Permanent Edition), "Chiropractic; Chiropractor," at pp. 156 et seq.
¶ 7 Spinal adjustments or manipulations appear to be the gist of chiropractic and we are of the opinion that such were surely intended to be included in the Oklahoma definition, supra. It also clearly appears that 72-6(E)(7) of the Insurance Department's rules operates to allow insurers to exclude such spinal adjustments and manipulations from their coverage. But is such exclusion necessarily violative of 36 O.S. 6055-36 O.S.6057 of the statutes, supra?
¶ 8 We note that 36 O.S. 3611(B)(3) (1988), states:
 The [State Insurance] department shall adopt rules and regulations which establish minimum standards for the general content of forms of individual and family health policies, which shall be inclusive of terms of renewability, initial and subsequent conditions of eligibility, termination of insurance, probationary periods, exclusions, limitations, and reductions.
(Emphasis added).
¶ 9 It is under authority of this subsection that the Insurance Department promulgated 72-6(E)(7) of its Oklahoma Regulations. It is particularly pertinent to note that the exclusions listed under subsection E for the most part relate to substantive illnesses or disorders. For example, pre-existing conditions or diseases, mental or emotional disorders, alcoholism and drug addiction, pregnancy (with conditions), illnesses or conditions arising out of war, suicide, aviation, or interscholastic sports, etc., are listed as permissible exclusions. We particularly also note that subsection (E)(6) authorizes the exclusion of "foot care in connection with corns, calluses, flat feet, fallen arches, weak feet, chronic foot strain, or symptomatic complaints of the feet," all conditions which a licensed podiatrist might earnestly wish not to be excluded. Can the podiatrist claim a violation of 36 O.S. 6055-36 O.S. 6057, supra, simply because the rule permits exclusion of many of the conditions which he commonly treats? We think not.
¶ 10 However, there is a clear distinction to be made in connection with the language of subsection (E)(7). When this subsection speaks of "detection and correction by manual or mechanical means," it is talking of a service or procedure rather than a substantive illness or condition. This clearly violates both the spirit and the letter of the "freedom of choice" laws. That is to say, the Insurance Department by authority of 36 O.S.3611(B)(3), supra, may promulgate a rule of exclusion or limitation as to a substantive illness or condition, e.g., "nerve interference." But if "nerve interference" is not excluded or limited then the Department may not promulgate a rule excluding or limiting the service or procedure for its detection and correction, at least not if the service or procedure may be performed by any "practitioner" covered by the "freedom of choice" laws.
¶ 11 Our reading of 72-6(E)(7) of the Insurance Department's Oklahoma Regulations convinces us that the substantive and procedural parts thereof cannot be reasonably separated and we therefore conclude that it must be declared violative of the "freedom of choice" statutes in its entirety. We express no opinion at this time on the validity of the substantive part, if and when the rule is repromulgated.
¶ 12 It is, therefore, the official opinion of the AttorneyGeneral that because of its effect upon chiropractors and thepractice of chiropractic, 72-6(E)(7) of the State InsuranceDepartment's Code of Oklahoma Regulations is in conflict with36 O.S. 6055-36 O.S. 6057 (1981), as amended 36 O.S.6055-36 O.S. 6057 (1989), and therefore is of no force andeffect.
ROBERT H. HENRY ATTORNEY GENERAL OF OKLAHOMA
HUGH H. COLLUM ASSISTANT ATTORNEY GENERAL