Jerry R. ENGLAND et al., Appellants,

v.

LOUISIANA STATE BOARD OF MEDICAL EXAMINERS et al., Appellees.

No. 16920.

United States Court of Appeals
Fifth Circuit.

Sept. 9, 1958.

J. Minos Simon, Lafayette, La., Floyd J. Reed, New Orleans, La., Jack L. Simms, Leesville, La. (Russell Morton Brown, Washington, D. C., on the brief), for appellants.

St. Clair Adams, Jr., New Orleans, La. (Adams & Reese, New Orleans, La., on the brief), for defendants-appellees.

Before RIVES, BROWN, and WISDOM, Circuit Judges.

PER CURIAM.

This case was originally assigned to Judge Wisdom, who has written an opinion, which has been changed to appear as the dissenting opinion, fully and fairly developing the issues and concluding in affirmance of the district court's judgment in accordance with the tentative vote of all three judges in conference. Upon further study and deliberation, however, Judges Rives and Brown now believe that the district court erred in dismissing the complaint for lack of a substantial federal question warranting exercise of jurisdiction. Ex parte Por-

esky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152.

We are not called on at this time to say whether chiropractors should be admitted to practice in Louisiana, but the question is whether they are entitled to an opportunity to prove that the State's denial of their claimed right to practice an allegedly useful profession is so arbitrary and unreasonable as to amount to a denial of due process or of the equal protection of the laws under the Fourteenth Amendment. It is certainly true that the State is not bound to recognize every peculiar theory or school of medicine. Without doubt it is reasonable for the state to outlaw witch doctors, voodoo queens, bee stingers, and various other cults which no reasonably intelligent man would choose for the treatment of his ills, but it would certainly be arbitrary to exclude some, if not all, of the following classes which Louisiana does admit to practice: dentists, osteopaths, nurses, chiropodists, optometrists, pharmacists, and midwives. Just where is the dividing line? Under all of the cases, we think it is that the State cannot deny to any individual the right to exercise a *reasonable* choice in the method of treatment of his ills, nor the correlative right of practitioners to engage in the practice of a useful profession.

The case closest in point to that now presented is Louisiana State Board of Medical Examiners v. Fife, 1926, 162 La. 681, 111 So. 58, 54 A.L. R. 594, affirmed in a Per Curiam opinion on May 2, 1927, 274 U.S. 720, 47 S.Ct. 590, 71 L.Ed. 1324. In the thirty odd years since that decision was rendered, we judicially know that the healing art in general has made further enormous progress away from the ancient days when barbers did the blood letting. Can we say without hearing the evidence that chiropractic is no more entitled to recognition today than it was thirty odd years ago? It is claimed that the practice of chiropractic has now been legalized in forty-four of the States, in Hawaii, and in the District of Columbia, and that respectable colleges of chiropractic have been founded with courses comparable in length and claimed to be equal in quality to the medical colleges. It is not denied that the state may regulate, within reasonable bounds, the practice of chiropractic for the protection of the public health; but it is claimed that the requirements of a diploma from a college approved by the American Medical Association and a knowledge of surgery and materia medica bear no reasonable relation to the practice of chiropractic. Without hearing the evidence, we cannot say that those claims are untrue, or that a reasonable man might not intelligently choose a chiropractor for the treatment of some particular ailment. We hold simply that the plaintiffs are entitled to a day in court, to an opportunity to prove their case. The judgment is therefore reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

WISDOM, Circuit Judge (dissenting).

This is an appeal from the United States District Court for the Eastern District of Louisiana. Appellants requested that a three-judge court be convened. The request was denied. After a hearing on appellee's motion to dismiss, treated as a motion for summary judgment, the district court dismissed the complaint.

With all due deference to my learned brothers on the Court, respectfully I dissent. It seems to me that there is no dispute as to any material factual issue. The critical issues of law appear on the face of the pleadings. We should decide them now.

Chiropractors are entitled to their day in court. They are not entitled to an extra day.

It is the business of the state to decide who shall practice medicine and under what circumstances a license may be issued. It is not our business—unless (1) the licensing statute is so unreasonable or (2) is administered so unreason-

ably as to amount to a denial of due process or of equal protection of the laws under the Fourteenth Amendment.

The statute is in the books for us to read. It has been interpreted by the Supreme Court of Louisiana. Similar statutes have been interpreted by the Supreme Court of United States. The overwhelming weight of the decisions is against the plaintiffs.

Remand of this case produces a strange paradox. It allows a trial in order to show that chiropractic has advanced so far in the last thirty years that the Louisiana Medical Practice Act is unconstitutional—since it has no exception to permit *lower* standards to be applied to chiropractors than to any other applicants for a license to practice medicine. The effect of remanding is to allow the plaintiffs to introduce evidence that the Louisiana Board of Medical Examiners is acting unconstitutionally in that the Board does not disregard the statute by making a special exception for chiropractors, since they cannot meet the standards everyone else must meet.

Evidence that materia medica and surgery bear no relation to chiropractic strikes me as immaterial. The standards established in the Louisiana Medical Practice Act do not purport to bear a relation to the practice of chiropractic. The object of the law is to license those persons holding themselves out as qualified medical doctors—qualified to practice surgery and medicine generally, not necessarily chiropractic or any narrow, specialized practice or alleged healing skill.

It may be difficult in some cases for judges to avoid interstitial lawmaking. But not here. This is a clear case where it is for the legislature to take notice of the limitations in the medical training and the practice of chiropractic. It has done so in many similar cases: for optometrists, mid-wives, pharmacists, osteopaths, nurses, and chiropodists by enacting special licensing laws. It has taken note of chiropractors, limitations by *not* enacting a special law for their benefit. It is not for us to make a law for chiropractors or to say that the legislature enacted an unconstitutional law because it makes all applicants for a medical license toe the same mark.

Accepting the pleadings and exhibits as true, the plaintiffs failed to make a case. They failed to present a federal question not already decided against them by the United States Supreme Court. Since there is no diversity of citizenship, the district court properly held that it had no jurisdiction. Hitchcock v. Collenberg, D.C.Md.1956, 140 F. Supp. 894, involving naturopathic practitioners, and citing leading Louisiana cases, is almost on all fours with the instant case. The United States Supreme Court affirmed Hitchcock v. Collenberg in a per curiam opinion in 1957, 353 U.S. 919, 77 S.Ct. 679, 1 L.Ed.2d 718, citing Dent v. State of West Virginia, 1889, 129 U.S. 114, 9 S.Ct. 231, 32 L.Ed. 623. Cf. the per curiam opinion affirming Louisiana State Board of Medical Examiners v. Fife, 1926, 162 La. 681, 111 So. 58; 1927, 274 U.S. 720, 47 S.Ct. 590, 71 L.Ed. 1324.

The continuity in this field of law is unbroken.

### I.

Forty chiropractors filed suit. Each holds a diploma allegedly from "a school in good standing teaching the healing arts, to-wit: the Science of Chiropractic". They ask for a declaratory judgment and for an injunction against the Louisiana State Board of Medical Examiners. (1) They attack the constitutionality of the Louisiana Medical Practice Act (LSA–R.S. 37:1261 et seq.) on the ground that on its face the statute is arbitrary, discriminatory and couched in terms so as to deprive appellants of their civil rights, privileges, and immunities, and equal protection under the Constitution and laws of the United States. (2) They attack the Louisiana State Board of Medical Examiners as acting unconstitutionally in discriminating wilfully and maliciously against chiropractors, in violation of the plaintiffs' constitutional rights under the Fourteenth Amendment.

The Louisiana Medical Practice Act creates the Louisiana State Board of Medical Examiners "[to] examine all applicants for the practice of medicine". Section 1271 is the center of the chiropractors' target. This reads:

"Any person who wishes to practice medicine shall:

"(1) Be twenty-one years of age;

"(2) Be a citizen of the United States;

"(3) Be of good moral character;

"(4) Present to the board a diploma from a college in good standing of any sect teaching medicine or the healing art; and

"(5) Pass an examination before the board upon the following: Anatomy, Physiology, Chemistry, Physical Diagnosis, Pathology, and Bacteriology, Hygiene, Surgery, Theory and Practice of Medicine, Materia Medica, Obstetrics, and Gynecology."

In Section 1275 the legislature allows the Board to waive examinations in favor of an applicant from another state who presents a certificate of examination from a board of medical examiners "received on the equivalent of a 'Class A college standard American Medical Association'."

In line with Section 1275, the Board has consistently construed "a college in good standing" to mean a medical school approved by the Association of American Medical Colleges or the Council on Medical Education and Hospitals of the American Medical Association. Schools of chiropractic are not accredited by the American Medical Association. Over the years, while the Board has so construed the law, the act has been amended and re-enacted on a number of occasions, and in 1950 was reenacted as part of the Louisiana Revised Statutes.

The chiropractors contend, first, that the Act delegates arbitrary authority to the Board, with no standards to guide the Board in determining what is a "college in good standing". The chiropractors insist, secondly, that they are as qualified as anyone else under the terms of the statute to take the examination. They say that the Board's construction of the statute has the effect of prohibiting the practice of chiropractic in Louisiana and is therefore discriminatory. In any event, they argue that chiropractors should enjoy the exemption given dentists, osteopaths, and pharmacists.

II.

The Louisiana Medical Practice Act is substantially similar to medical practice statutes of other states. These statutes have been attacked frequently on constitutional grounds similar to those the chiropractors urge on this appeal. Three decisions of the United States Supreme Court are the leading cases on the subject: Dent v. State of West Virginia, 1889, 129 U.S. 114, 9 S.Ct. 231, 32 L.Ed. 623; Douglas v. Noble, 1923, 261 U.S. 165, 43 S.Ct. 303, 67 L.Ed. 590; Graves v. State of Minnesota, 1926, 272 U.S. 425, 47 S.Ct. 122, 71 L.Ed. 331. See also Hitchcock v. Collenberg, D.C.Md.1956, 140 F.Supp. 894, affirmed per curiam, 1957, 353 U.S. 919, 77 S.Ct. 679, 1 L.Ed. 2d 718, citing Dent v. State of West Virginia.

No one of course has an absolute right to practice medicine. This right is conditioned upon one's complying with reasonable regulations imposed by the State to protect the public health and welfare. Courts at every level in the judicial hierarchy emphasize that no profession is more open to eligibility regulations than the practice of medicine. " * * * Dealing, as its followers do, with the lives and health of the people, and requiring for its successful practice general education and technical skill, as well as good character, it is obviously one of those vocations where the power of the state may be exerted to see that only properly qualified persons shall undertake its responsible and difficult duties." Watson v. State of Maryland, 1910, 218 U.S. 173, 176, 30 S.Ct. 644, 646, 54 L.Ed.

In Dent v. State of West Virginia the Court passed upon the validity of 987.

a state statute requiring every practitioner of medicine to obtain from the State Board of Health a certificate showing that he was a graduate of "a reputable medical college" or had practiced medicine ten years or had been examined by the Board and found qualified to practice medicine. The claim was made that the statute was unconstitutional because it vested in the Board arbitrary power to decide what was a reputable medical college, and thereby deprived defendant of due process. The Court sets forth basic considerations governing the power of a state to issue a license.[1] The Court held that the statute did not violate due process, and also intimated that the equal protection clause could not be used to strike down the statute either. Mr. Justice Field, for the Court, said: "Few professions require more careful preparation by one who seeks to enter it than that of medicine. * * * Reliance must be placed upon the assurance given by his license, issued by an authority competent to judge in that respect, that he possesses the requisite qualifications. * * * No one has a right to practice medicine without having the necessary qualifications of learning and skill; and the statute only requires that whoever assumes, by offering to the community his services as a physician, that he possess such learning and skill, shall present evidence of it by a certificate or license from a body designated by the

state as competent to judge of his qualifications." The Court pointed out that: "There is nothing of an arbitrary character in the provisions of the statute in question. *It applies to all physicians* * * * it imposes no conditions which cannot be readily met; * * * *"*

The question of inadequate standards was not raised in the Dent case. It was in Douglas v. Noble [261 U.S. 165, 43 S.Ct. 305], involving a Washington statute providing that only licensed persons might practice dentistry. All applicants were required to undergo an examination by a board of examiners. To be eligible, the applicant had to be of good moral character and present a diploma from "a reputable dental college". The contention was, that since the statute did not state in terms what the scope and character of the examination should be, arbitrary power was conferred upon the board in violation of due process. Mr. Justice Brandeis, for the Court, pointed out that the authority the statute confers is a matter of construction and "its construction is a question of state law". Washington courts had construed the statute as not conferring arbitrary power upon the Board. The Supreme Court agreed that the statute indicated a general standard of fitness and the character and scope of the examination; subsidiary matters were appropriately committed to an administrative board; "the discretion here

1. "It is undoubtedly the right of every citizen of the United States to follow any lawful calling, business, or profession he may choose, subject only to such restrictions as are imposed upon all persons of like age, sex, and condition. This right may in many respects be considered as a distinguishing feature of our republican institutions * * * The power of the state to provide for the general welfare of its people authorizes it to prescribe all such regulations as in its judgment will secure or tend to secure them against the consequences of ignorance and incapacity, as well as of deception and fraud. As one means to this end and it has been the practice of different states, from time immemorial, to exact in many pursuits a certain degree of skill and learning upon which the community may confidently rely; there possessions

being generally ascertained upon an examination of parties by competent persons, or inferred from a certificate to them in the form of a diploma or license from an institution established for instruction on the subjects, scientific and otherwise, with which such pursuits have to deal. The nature and extent of the qualifications required must depend primarily upon the judgment of the state as to their necessity. If they are appropriate to the calling or profession, and attainable by reasonable study or application, no objection to their validity can be raised because of their stringency or difficulty. It is only when they have no relation to such calling or profession, or are unattainable by such reasonable study and application, that they can operate to deprive one of his right to pursue a lawful vocation."

granted to the examining board was well within the limits allowed by the Federal Constitution". The principles expressed in Douglas v. Noble are alive and pertinent.

Graves v. State of Minnesota passes directly on the question whether a state could require a dentist to attend a school "in good standing" to be eligible for an examination before a Board of Dentists. The Court sustained the conviction of a dentist for practice of dentistry without a license even though he was a graduate dentist, because he was not graduated from an accredited school. The statute required a diploma from a "dental college of good standing". "By enacting the present statute the State has determined, through its legislative body, that to safeguard properly the public health it is necessary that no one be licensed to practice dentistry who does not hold a diploma from a dental college of good standing. That determination must be given great weight. * * * Clearly the fact that an applicant for a license holds a diploma from a reputable dental college has a direct and substantial relation to his qualification to practice dentistry. We cannot say that the State is acting arbitrarily or unreasonably when, in the exercise of its judgment, it determines that the holding of such a diploma is a necessary qualification for the practice of dentistry; or that the distinction made in the granting of licenses between applicants who hold such diplomas and those who do not, is a classification which has no real or substantial basis * * *"

These cases hold that a state is not acting arbitrarily, in the regulation of the practice of medicine, in requiring that applicants for a license shall attend a "college of good standing" in order to be eligible for an examination leading to a license to practice. This re-quirement is not a grant of unlimited discretion to a board of examiners. In effect it is a legislative standard to guide the board charged with administering the act. Further, a board of examiners does not act arbitrarily if it construes "college of good standing" as limited to certain approved or accredited schools.

Under Douglas v. Noble and Graves v. State of Minnesota federal courts are admonished to turn to state decisions on these questions and to give great weight to them.

### III.

Allopathic State Board of Medical Examiners v. Fowler, 1898, 50 La.Ann. 1358, 24 So. 809, 810 dealt with a statute creating a board of medical examiners composed of physicians recommended for appointment from lists furnished by the Louisiana Medical Society and the Hanneman [sic] State Medical Society. These organizations represented what were then the two recognized schools of medical science: the allopathic and the homeopathic[2] schools. The statute required an applicant for a license to present to the board a diploma from a medical college in good standing. The defendant had practiced medicine for several years. He had a diploma. But his diploma was from a "reputable institution of the eclectic school of medicine". He claimed that the statute discriminated against practitioners of the eclectic school. The court upheld his conviction on the narrow ground that he had practiced medicine without a license, but the Court upheld the constitutionality in broad terms. The reference to discrimination against the eclectic school is particularly relevant to this case:

"* * * The legislature has not dealt with the eclectic school of medicine, and discriminated against it; it has simply selected as examiners, as it had the constitutional right to

---

2. Webster's New International Dictionary, Second Edition, (1958) defines "homeopathy" as follows: "The art of curing, founded on resemblances; the theory and its practice that disease is cured by remedies which produce on a healthy per-son effects similar to the symptoms of the complaint of the patient, the remedies being usually administered in minute doses. This system was founded by Dr. Samuel Hahnemann and is opposed to *allopathy, or heteropathy*".

do, boards of examiners composed of physicians recommended for appointment by two certain named medical societies, and appointed by the governor on such recommendation. It has required that a person, before practicing medicine in the state, should present to the boards mentioned a diploma from a medical college in good standing, but it has not attempted to declare and fix what constituted a medical college, nor what particular colleges nor classes of colleges were to be considered as 'medical colleges in good standing.' * * * We know of no constitutional right given to particular persons, who, entertaining peculiar theories of medicine, group themselves together, and call themselves a special school of medicine under a selected name, to be recognized as and dealt with as such. An indefinite number of schools of medicine might claim recognition, with no fixed ascertained standard to pass upon their pretensions. * * *"

In Louisiana State Board of Medical Examiners v. Cronk, 1924, 157 La. 321, 102 So. 415, the court held that a chiropractor who had treated persons for liver, kidney, stomach complaints and other body ailments was practicing medicine. The court defined "chiropractic" as stated in the margin of this opinion.[3]

The leading case in Louisiana is Louisiana State Board of Medical Examiners v. Fife, 1926, 162 La. 681, 111 So. 58, 61;[4] 1927, 274 U.S. 720, 47 S.Ct. 590, 71 L.Ed. 1324. In the Fife case the Board sued to enjoin certain chiropractors from practicing medicine without a license. The defendants contended that the Medical Practice Act was unconstitutional because: (1) chiropractors were required to take materia medica and surgery, and since these subjects had no relation to chiropractic the Act suppresses chiropractors and violates due process; (2) chiropractors are not exempt from the Act as are dentists, osteopaths, and pharmacists, and this denied chiropractors the equal protection of laws guaranteed by the 14th amendment. The Supreme Court of Louisiana held the Medical Practice Act constitutional. In construing the statute the Louisiana Court makes the important point: " * * * While materia medica and surgery are not used in the chiropractic system, still they, as well as the other subjects required by the act, as amended, bear a relation to the practice of medicine as a general science and that, in view of the fact that the Legislature is not bound to recognize every

---

3. " 'Chiropratic' is defined in the catalogue of the Palmer School of Chiropractic as 'the philosophy, science, and art of things natural, and a system of adjusting the subluxated vertabrae of the spinal column, by hand, for the restoration of health.' The dean of the faculty of the Palmer School of Chiropractic testified on the trial of this case as follows:

" 'The theory of chiropractic is that the subluxation produces pressure upon nerves which produce abnormal condiditions on the tissues of the body; and by the adjustment of this subluxation the pressure is relieved, normal impulses are allowed to flow through these nerves, and the natural forces of the body do the rest.'

" 'A subluxation,' as defined by the defendant in his testimony, is 'a slight displacement of a vertebra.' Defendant also testifies that he uses no drugs in his practice, which consists solely in adjusting the subluxated vertebrae of the spine with both hands, and that the application of the hands is not in the nature of either rubbing or pressing, but is a thrusting movement. * * *" Louisiana State Board of Medical Examiners v. Cronk, 1924, 157 La. 321, 102 So. 415, 416. Appellants quote this definition in their complaint.

4. A Writ of Error was taken in the Fife case to the United States Supreme Court. The Court affirmed the decision of the Supreme Court of Louisiana in a Per Curiam decision as follows: "May 2, 1927. * * * Per Curiam: Affirmed on the authority of Dent v. State of West Virginia, 129 U.S. 114, 9 S.Ct. 231, 32 L.Ed. 623; Douglas v. Noble, 261 U.S. 165, 43 S.Ct. 303, 67 L.Ed. 590, and Graves v. State of Minnesota, 272 U.S. 425, 47 S.Ct. 122, 71 L.Ed. 331.

school of medicine, and deal with it as such, is sufficient to prevent the act from being unconstitutional." The Fife case held that the Legislature could in its discretion, exempt certain groups and provide for them under separate statutes, and that those whom the Legislature did not choose to exempt had to comply with the provisions of the Act if they were practicing medicine. " * * * defendants cannot complain, on the ground of being unjustly discriminated against, because the Legislature has not deemed proper to recognize their school of medicine, and make special provision for those desiring to practice that system, by prescribing a course of study in accord with the theories which it holds for restoring health. * * * If defendants wish to treat the sick in accordance with the theories held by them, they must comply first with the Act of 1914, as amended. * * * "

In Louisiana State Board of Medical Examiners v. Beatty, 1951, 220 La. 1, 55 So.2d 761, 763, a direct attack was made on the "college in good standing" requirement. In that case, chiropractors claimed that the Act was unconstitutional because it vested arbitrary power in the Board in determining what is a "college in good standing", and thereby denied chiropractors of equal protection of law. On the basis of the Graves case, the Supreme Court of Louisiana rejected this argument and held:

> "The provision that the applicant present a diploma from a college in good standing does not clothe the Board with an arbitrary power but only with the right to exercise discretion."

As to the objection that the Board consistently recognized only schools accepted by the American Medical Association, the court said:

> " * * * it would make no difference, insofar as the constitutionality of the Act is concerned, whether the Board has taken such a stand or not. If the Board has made an arbitrary ruling as to the colleges which it recognizes as being in good standing, the remedy of the injured party is to apply for a mandamus."

### IV.

We take up now the language of the Louisiana statute. Appellants assert that their "chief" complaint is that the statutes discriminates against them, "although there exists no distinction, bearing reasonable relation to the object of the statute, between plaintiffs and others, so as to justify the discrimination". They assert also that "the basic issue" is that the Board discriminates against them. There is very little difference between the legal positions of Dr. Fowler of the eclectic school, in Allopathic State Board of Medical Examiners v. Fowler, and Dr. England of the chiropractic school.

The Louisiana statute may creak a little with age. But it has managed to work. And it has worked in substantially the same form for more than forty years. The "practice of medicine" is defined broadly enough to apply to witch doctors, voodoo queens, or the pharmacist who suggests aspirin for a headache.[5] So it should be, in the interest of protecting the public health.

---

5. The present Medical Practice Act of Louisiana was originally Act 56 of 1914. Section 9 of Act 54 of 1918 amended re-enacted Section 13 of the Act of 1914. That section, now LSA–R.S. 37:1261, reads: "As used in this Part, 'The practice of medicine, surgery or midwifery' means the holding out of one's self to the public as being engaged in the business of diagnosing, treating, curing, or relieving any bodily or mental disease, condition, infirmity, deformity, defect, ailment, or injury in any human being other than himself whether by the use of any drug, instrument or force, whether physical or psychic, or of what other nature, or any other agency or means; or the examining, either gratuitously or for compensation, of any person or material from any person for such purpose whether such drug, instrument, force, or other agency or means is applied or used by the patient or by another person; or the attending of a woman in childbirth with-

There is no discrimination against chiropractors as such. The Act does not prohibit the practice of chiropractic or of any other system. The statute simply prohibits the practice of medicine without a license. It applies to all. Anyone who can meet the qualifications may take an examination, and upon passing, will be issued a license. Thereafter, if he chooses, he may specialize in the "science of chiropractic". In at least one instance (according to the exhibits) a license was issued to a practicing chiropractor who met the requirements of the Act.

The statute establishes standards. They seem reasonable to me. Section 1271(4) requires an applicant to furnish a diploma from a "college in good standing". Section 1271(5) lists the subjects on which the appellant must be examined: "Anatomy, Physiology, Chemistry, Physical Diagnosis, Pathology and Bacteriology, Hygiene, Surgery, Theory and Practice of Medicine, Materia Medica, Obstetrics, and Gynecology." This list is surely descriptive of the subjects that the legislature regarded as the minimum requirements for the curriculum of a medical school, if the school is to meet the legislative standard of "a college in good standing". Section 1275 shows that the legislature equated "a college in good standing" with one approved by the American Medical Association. Section 1275 provides: "The board may waive examinations in favor of any applicant who presents to the board a satisfactory certificate of examination from a board of medical examiners of another state if the board finds that the certificate of examination from the board of medical examiners of another state was received on the equivalent of 'Class A college standard American Medical Association'." This amounts to the legislature defining a college in good standing as a "Class A college standard American Medical Association". If the legislature allows the Board to waive examinations in favor of an applicant who presents a certificate from a Board of Examiners from another state only if he presents a certificate received on the equivalent of "Class A college standard American Medical Association", it is not unreasonable or arbitrary for the Board to apply the same minimum standard to Louisiana applicants.

The chiropractors argue that their diplomas are from colleges of good standing and should carry as much weight as a diploma from Johns Hopkins; for example, they say, that the Palmer School of Chiropractic requires a total of 4,485 class hours against 3,-397 class hours at Johns Hopkins Medical School. A detailed comparison throws a good deal of light on the reasonableness of the Board's actions measured against the standards considered proper by the legislature. 1,723 hours of subjects not taught at Johns Hopkins are taught at Palmer School. These include 195 hours of "Chiropractic Philosophy", 65 hours of Public Speaking, 65 hours of "Neurocolometer and Neurocolograph", 65 hours of "Ethics and Jurisprudence", 130 hours of "Principles and Practice, Chiropractic", 1,193 hours of Chiropractic Technic, Practice, and Hygiene. 1,192 hours of subjects not taught at Palmer School are taught at Johns Hopkins: 656 hours of medicine, 352 hours of surgery, 72 hours of pediatrics, 80 hours of pharmacology, 16 hours of psychology, and 16 hours of therapeutics.

This breakdown comes from an exhibit filed by the chiropractors. It seems to me that it demonstrates conclusively the reasonableness of the Board's interpretation of its duty under the Louisiana statute. The Louisiana legislature has said that a license to practice medicine in the state means that the licensee has sufficient knowledge of the subjects listed in Section 1271(5) to pass an examination on these subjects. It is implicit in the act that the licensee studied

out the aid of a licensed physician, surgeon or midwife; or the using of any other title other than optician, to indicate

that he is engaged in the business of refracting or fitting glasses to the human eye."

these subjects in a college of good standing. The exhibits prove that chiropractors have not the training for surgery and general medical knowledge for which a doctor's license is the accepted symbol to the public. On the plaintiffs' showing in this case, the Board would have been derelict in its statutory duty if it had permitted them to take an examination leading to a license.

Finally, the chiropractors complain that the Board arbitrarily and through pure whim discriminates against them in not requiring dentists, osteopaths, nurses, chiropodists, optometrists, pharmacists, and midwives to comply with the Medical Practice Act. These occupations or professions are the subject of special legislative acts. As said in the Fife case, in answer to the same argument: the requirements for admission of osteopaths, midwives, chiropodists, trained nurses and others are different; they do not need materia or surgery. The legislature has taken notice of the limited training of a chiropodist or a midwife and has authorized issuance of a restricted license to practice a specialty. But, as in Fife, the legislature is not "called upon to recognize every school of medicine * * * [It] has a reasonable discretion as to whether a particular school should be recognized and special provisions made for it".

Appellants contend that they do not need materia medica or surgery in the practice of chiropractic. No doubt. But "Dr." carries no descriptive tag. As long as a license to practice medicine implies a knowledge of materia medica and surgery, the Board of Examiners cannot be considered arbitrary or unreasonable in not accepting a diploma from the Palmer School of Chiropractic on the same basis as a diploma from Johns Hopkins Medical School.

Let us suppose that a number of well trained psychology majors, after attending Duke University, organize a graduate school of medicine in ESP, using extrasensory perception exclusively for diagnosis and hypnotism exclusively for treatment. Materia medica and surgery have no bearing on the practice of ESP. Their school has 2,000 hours in subjects not taught at Johns Hopkins; Hopkins has no special courses on ESP. It is clear that under the Louisiana law, they practice medicine. Some of the ESP practitioners have had uncanny success in certain cases, especially in the psychiatric field. In thirty years ESP has advanced a long way from the ouija board. It is argued that the public should have the constitutional right to go to a doctor of their choice for medical treatment. I have no doubt that Louisiana could enact a law licensing ESP practitioners to practice their specialty. But the state is under no constitutional obligation to license every organized group giving treatments for health. I cannot imagine this Court or any other court telling the state of Louisiana that its general medical practice act is unconstitutional, because ESP practitioners are not eligible to be licensed. I cannot imagine this Court or any other court remanding a case to allow an ESP practitioner to show that the Board of Medical Examiners was arbitrary in declaring him ineligible for a license that would allow him to ignore Dr. Rhine's lectures and instead cut open a man's brain.

I say nothing against chiropractors. The American Medical Association may some day go the way of the Hahnemann Medical Society. For all we know, the Louisiana legislature may some day substitute "Chiropractic Philosophy" and "Neurocolometer and Neurocolograph" for materia medica and surgery in Section 1271. I say only that the Medical Practice Act is not arbitrary and unreasonable on its face and accepting the allegations of the complaint as true, the Board of Medical Examiners has not acted arbitrarily or unreasonably, even though the statute, as administered by the Board, has the effect of barring from state medical examinations applicants with diplomas from schools of chiropractic.

The act set up reasonable standards. And everyone toes the same mark.

## V.

The district court properly dismissed the complaint for lack of a substantial federal question warranting exercise of jurisdiction. Ex parte Poresky, 290 U. S. 30, 54 S.Ct. 3, 78 L.Ed. 152. I would affirm.