W.L. RAYBORN, Ralph W. Pinto, Nevel B. Collier, James A. Ross and Edwin Greer, Plaintiffs,

v.

MISSISSIPPI STATE BOARD OF DENTAL EXAMINERS, Lee Hasseltine, William P. Edgar, Herman K. Smith, James H. Stribling, Clyde Sprayberry and Robert Holifield individually and as members of the Mississippi State Board of Dental Examiners, Defendants.

Civ. A. No. J81–0488(B).

United States District Court, S.D. Mississippi, Jackson Division.

Jan. 15, 1985.

James W. Kitchens, Kitchens & Pickard, Hazlehurst, Miss., Sheldon Gardner, Foss, Schuman & Drake, Chicago, Ill., for plaintiffs.

Bill Allain, Atty. Gen., William Larry Latham, Jackson, Miss., for defendants.

## MEMORANDUM OPINION AND ORDER

BARBOUR, District Judge.

In this civil action, Plaintiffs, Denturists[1] and dental laboratory technicians allegedly studying to be denturists, seek damages and injunctive and declaratory relief against the Mississippi State Board of Dental Examiners (hereinafter "Dental Board") and its individual members. In the five count Amended Complaint, the Plaintiffs attack the constitutionality of the Mississippi Dental Practice Act (hereinafter "Dental Act")—Sections 73–9–1 through 73–9–65 of *Mississippi Code Annotated* of 1972.[2]—and seek damages and injunctive relief against the members of the Dental Board for alleged violations of the Plaintiffs' civil rights pursuant to 42 U.S.C. §§ 1983 and 1985.

The Defendants have filed a Motion to Dismiss for failure to state a claim and a Motion for Summary Judgment. Since the parties have presented, and this Court has considered, matters outside the pleadings, the Rule 12(b)(6) Motion will be treated as one for summary judgment. The Defendants thus must show that there is no genuine issue as to any material fact, and that

---

**1.** Plaintiffs define the term denturist as follows: "a person other than a dentist (usually a technician), who engages in the practice of the denture phase of prosthodontics." Plaintiff's brief at page 2.

**2.** During the pendency of this lawsuit Plaintiff Rayborn has been an elected and sitting Senator in the Mississippi State Senate, and the Mississippi Dental Act has been re-enacted, with certain amendments which amendments are not relevant to any issue in this action. *See* 1983 Miss.Laws, Ch. 488.

they are entitled to judgment as a matter of law.

In the Amended Complaint, Plaintiffs present five numbered counts. However, the arguments presented by Plaintiffs' counsel and the claims presented in the Amended Complaint merge and reduce the legal issues. This Opinion will examine the Plaintiffs' basic claims in, and the arguments addressed to defeat and support, the Amended Complaint to determine the propriety of Defendants' Motion for Summary Judgment.

The constitutionality of Mississippi's Dental Act is attacked in two ways by Plaintiffs. First, Plaintiffs allege that the selection process for members of the Dental Board set forth in Section 73-9-7 of the *Mississippi Code Annotated* of 1972 (both before and after its 1983 amendment) creates a dental board which is comprised of dentists who are publicly opposed to the public practice of denturism, and, as such, the Dental Board cannot be fair and impartial to denturists, thereby denying Plaintiffs' rights to due process. Second, Plaintiffs challenge the constitutionality of Mississippi's Dental Act on other "due process" and "equal protection" grounds which are discussed below.

In their "Brief In Opposition Of Defendants' Motion For Summary Judgment And For Dismissal For Failure To State A Claim Upon Which Relief May Be Granted" Plaintiffs agree that the delegation of the power to appoint members of a state board to the members of the regulated profession is not unconstitutional per se. Plaintiffs' brief at page 13. However, Plaintiffs rely on certain language in *Friedman v. Rogers,* 440 U.S. 1, 99 S.Ct. 887, 59 L.Ed.2d 100 (1979), to support their contention that the Dental Board, although constitutionally selected, cannot fulfill the constitutional requisites of "acting fairly and properly when prosecuting plaintiffs or other denturists." Plaintiffs' brief at pages 12–13. Plaintiffs rely on affidavits to demonstrate that the Dental Board has acted unfairly. Thus, Plaintiffs contend that the Dental Board

has denied, or may deny, them their right to due process of the law.

█ A close look at the *Friedman* decision cited by both parties shows that, as a matter of law, Defendants are entitled to a judgment on Count I of the Amended Complaint. The *Friedman* Court states:

> Although Rogers has no constitutional right to be regulated by a Board that is sympathetic to the commercial practice of optometry, he does have a constitutional right to a fair and impartial hearing in any disciplinary proceeding conducted against him by the Board....

*Friedman v. Rogers,* 440 U.S. at 18, 99 S.Ct. at 898. There are absolutely no facts which indicate that the Mississippi Dental Board has conducted any disciplinary proceedings against any plaintiff. The absence of such facts is required because none of the Plaintiffs are licensed dentists or licensed dental hygienists. The disciplinary powers of the Dental Board are restricted to those two groups, and the Dental Board is statutorily without power to conduct any hearing in any disciplinary proceeding against any of the Plaintiffs. While the language in *Friedman* requires a professional regulatory board to be fair and impartial to those subject to its regulation and disciplinary proceedings so as to accord due process to those it disciplines, *Friedman* defeats the legal position taken by Plaintiffs with respect to Count I of the Amended Complaint. The *Friedman* court found that since the complaining party's challenge to the fairness of the composition of the professional regulatory board in that case did not arise from any disciplinary proceeding against him, the challenge was meritless. *Friedman v. Rogers,* 440 U.S. at 18–19, 99 S.Ct. at 898–899. The possibility that the Mississippi Dental Board would not, if it could, conduct a fair and impartial hearing in a disciplinary proceeding which it might undertake against persons similarly situated with Plaintiffs is a meritless "what if" constitutional argument, and this Court finds that there are no discernible circumstances which can support the con-

tentions of Plaintiffs under Count I of the Amended Complaint.

■ Next, Plaintiffs undertake an argument to show that there is no rational basis for the prohibition of the practice of denturism for the public. In Count II of the Amended Complaint, Plaintiffs challenge the constitutionality of such prohibition which is necessarily inferred from the language of the Dental Practice Act. Plaintiffs embrace the "rational relation" test utilized by federal courts to review state statutory classifications, and do not urge that a stricter standard of review is appropriate. This Court agrees that the rational relation test is applicable.

■ The due process clause of the Constitution requires much less than legislative consideration of economic regulations which result in economic hardships and the imposition of restrictions on · vocational freedom of choice and enjoyment on some persons. The Plaintiffs' due process challenge to the Dental Act is more appropriately to be addressed by the· Mississippi Legislature than by this Federal Court. As has been succinctly stated, business regulations are to be enacted and reexamined by state legislatures:

> The day is gone when this Court uses the Due Process Clause of the Fourteenth Amendment to strike down state laws, regulatory of business and industrial conditions, because they may be unwise, improvident, or out of harmony with a particular school of thought... "For protection against abuses by legislatures the people must resort to the polls, not to the courts."

*Williamson v. Lee Optical of Oklahoma, Inc.,* 348 U.S. 483, 488, 75 S.Ct. 461, 464, 99 L.Ed. 563 (1955) (citations omitted) *quoting Munn v. Illinois,* 4 Otto 113, 94 U.S. 113, 134, 24 L.Ed. 77 (1876). Instructions requiring studied reluctance by federal courts in actions seeking Constitutional examination of state economic regulations and legislation were further collated by the Supreme Court as follows:

> In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." ... "Problems of government are practical ones and may justify, if they do not require, rough accommodation—illogical, it may be, and unscientific." ... "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." ... "[I]t is a standard that is true to the principal that the Fourteenth Amendment gives the federal courts no power to impose upon the States their views of what constitutes wise economic or social policy."

*Dandridge v. Williams,* 397 U.S. 471, 485–86, 90 S.Ct. 1153, 1161–62, 25 L.Ed.2d 491 (1970) (citations and footnote omitted).

■ This Court's analysis of Plaintiffs' constitutional challenges to the *de facto* prohibition of the public practice of denturism under the auspices of Mississippi's Dental Act is thus limited to consideration of whether the Dental Act, and the subject prohibition, is rationally related to a legitimate state purpose.

Of particular guidance in the area of the regulatory power of states over the practice of dentistry is *Graves v. Minnesota,* 272 U.S. 425, 427–29, 47 S.Ct. 122, 122–23, 71 L.Ed. 331 (1926) wherein the following is stated:

> It is well settled that a State may, consistently with the Fourteenth Amendment, prescribe that only persons possessing the reasonably necessary qualifications of learning and skill shall practise [sic] medicine or dentistry ... By enacting the present statute the State has determined, through its legislative body, that to safeguard properly the public health it is necessary that no one be licensed to practice dentistry who does not hold a diploma from a dental college of good standing. That determination must be given great weight. Every pre-

sumption is to be indulged in favor of the validity of the statute ... And the case is to be considered in the light of the principle that the State is primarily the judge of regulations required in the interest of public safety and welfare, and its police statutes may only be declared unconstitutional where they are arbitrary or unreasonable attempts to exercise the authority vested in it in the public interest ... Clearly the fact that an applicant for a license holds a diploma from a reputable dental college has a direct and substantial relation to his qualification to practice dentistry. We cannot say that the state is acting arbitrarily or unreasonably when, in the exercise of its judgment, it determines that the holding of such a diploma is a necessary qualification for the practice of dentistry; or that the distinction made in the granting of licenses between applicants who hold such diplomas and those who do not, is a classification which has no real or substantial basis. And the constitutionality of the statute must be sustained.

The *Graves* court quoted the following be language from *Dent v. West Virginia,* 129 U.S. 114, 122, 9 S.Ct. 231, 233, 32 L.Ed. 623 (1899):

> The power of the State to provide for the general welfare of its people authorizes it to prescribe all such regulations as, in its judgment, will secure or tend to secure them against the consequences of ignorance and incapacity as well as of deception and fraud. As one means to this end it has been the practice of different States, from time immemorial, to exact in many pursuits a certain degree of skill and learning upon which the community may confidently rely, their possession being generally ascertained upon an examination of parties by competent persons, or inferred from a certificate to them in the form of a diploma or license from an institution established for instruction on the subjects, scientific and otherwise, with which such pursuits have to deal. The nature and extent of the qualifications required must depend primarily upon the judgment of the State as to their necessity.

It is manifest that Mississippi has a legitimate and lawful interest in the regulation of the practice of dentistry within its borders. The Plaintiffs attempt to draw a line between denturism and dentistry. The Plaintiffs assert that denturists have a basic familiarity with the subject prosthetic devices (*e.g.* artificial teeth or dentures, crowns and bridges) and usually have the skills to fabricate the devices, and, in addition, they have the skills to fit and adjust the devices directly to the user. Plaintiffs further assert that dentists are medically trained persons who have only a peripheral relationship, if any, with the fabrication of the prosthetic devices and frequently are unable to fabricate the device. The Mississippi Legislature, however, defines "dentists" as follows:

> Any person shall be regarded as practicing dentistry within the meaning of [the Mississippi Dental Practice Act] who shall ... correct malposition or irregularities of the teeth or jaws ... or construct, repair or mend artificial teeth, crowns or bridges....

*Miss.Code Ann.* § 73–9–3 (Supp.1983). Furthermore, the Mississippi Legislature apparently addressed the issue being urged to this Court and enacted, and in 1983 reenacted without change, the following:

> A person not licensed to practice dentistry under the laws of this state shall not, (1) take impressions or casts of the human mouth or teeth, (2) construct or supply dentures without the authorization or prescription of a person licensed under the laws of this state to practice dentistry, and (3) construct or supply dentures from impressions or casts without the authorization or prescription of a person licensed under the laws of this state to practice dentistry.

Miss.Code Ann. § 73–9–41 (Supp.1983) (in part).

What the Plaintiffs assert that they must and can prove to prevail on their argument that the prohibition of the public practice of denturism is unconstitutional and should be

statutorily permitted (and regulated) are the following facts: (1) the Mississippi Dental Practice Act harms the public by limiting the supply of dentures in Mississippi and by artificially maintaining high prices for dentures. (2) The limited supply and high price of the dentures in Mississippi effectively excludes many elderly and edentulous persons from purchasing dentures. (3) Denturists are capable of providing dentures without harm to the public at lower than current costs. However, even if the above "facts" are taken to be true, they do not make the state's regulatory scheme regarding the public practice of dentistry unconstitutional. These facts do, perhaps, make a good case for legislative action. Nevertheless, these facts do not negate every possible reason supporting the validity of the subject statutes. Such a negation is necessary in this case because the challenged economic regulations do not unreasonably entangle fundamentally personal rights, and there is no contention that the classification is drawn upon inherently suspect distinctions.

The right to practice the profession which Plaintiffs call denturism, which practice is inherently and inexorably connected to the field of public health and welfare— being a sub-profession to dentistry which itself is a sub-profession in the field of medicine—is subjugated to the state's greater right and duty to provide for the general welfare of its people and to protect society. This subjugation, of course, is limited, and the state in its regulations may not arbitrarily take from these denturist plaintiffs their estate in the practice of denturism. This principle has been enunciated by the Supreme Court as follows:

> It is undoubtedly the right of every citizen of the United States to follow any lawful calling, business or profession he may choose, subject only to such restrictions as are imposed upon all persons of like age, sex and condition. This right may in many respects be considered as a distinguishing feature of our republican institutions. Here all vocations are open to everyone on like conditions. All may be pursued as sources of livelihood, some

requiring years of study and great learning for their successful prosecution. The interest, or, as it is sometimes termed, the estate acquired in them, that is, the right to continue their prosecution, is often of great value to the possessors, and cannot be arbitrarily taken from them, any more than their real or personal property can be thus taken. But there is no arbitrary deprivation of such right where its exercise is not permitted because of a failure to comply with conditions imposed by the State for the protection of society.

*Dent v. West Virginia*, 129 U.S. at 121–22, 9 S.Ct. at 233–34.

That the state legislature has recognized and regulated other sub-professions within the broad category of medical health care is an insufficient argument to justify a federal court to do that which the state's legislature is uniquely qualified, empowered and entrusted, but has chosen not, to do. The weighing of the relative evils created and prevented by the Mississippi Dental Act is a function for the state legislature. This Court, perceiving no discernible circumstances supporting any constitutionally impermissible prohibition or classification on the facts alleged by Plaintiffs does not, and should not, sit as a super-legislature on these economic, professional, and health care regulations.

Plaintiffs' argument that denturists own the same qualifications as dentists with regard to the measurement, construction and placement of dentures for the human mouth does not defeat the apparent reasons for the state's requirement that a person licensed in Mississippi to practice dentistry be responsible to the individual patients and to the public for the observance of the oral cavity, the technical specifications of the denture to be manufactured, and the placement and adjustment of that prosthetic device in the human mouth. In the state's judgment, the qualifications required to obtain a dentist license are necessary for the protection of its citizens both with regard to the supply of dentures and other traditional services performed by

dentists. The detection, diagnosis and treatment of medical diseases of the mouth and related areas is notably absent from the Plaintiffs' description and definition of their and other denturists' qualifications and ability.

Notwithstanding the apparently rational basis for the state's requirement that dentists licensed by it be directly involved and ultimately responsible for the public's acquisition of dentures, Plaintiffs assert that their challenge to the statutory prohibition of public denturism entitles them to a day in court. To support this contention, Plaintiffs rely upon the decisions in the case of *England v. Louisiana State Board of Health*, 259 F.2d 626 (5th Cir.1958) *Pet. for reh. den. with written opinion*, 263 F.2d 661 (5th Cir.1959). The *England per curium* decisions overruled the district court's granting of a summary judgment in favor of the state defendant whereby the lower court had, in determining the motion, upheld the state's interpretation and administration of its statutory requirements for obtaining a license to practice medicine, which application effectively excluded all non-medically trained chiropractors from engaging in the practice of chiropractic.

An analysis of the *England* decisions reveals to this Court a dramatic distinction between the case before the Fifth Circuit over 24 years ago and the case *sub judice*. The majority opinion of the court in its decision denying the state defendant's petition for rehearing was careful to explain their prior reasoning as follows:

> The Louisiana State Board of Medical Examiners certainly cannot be required [by a federal court] to issue to a chiropractor a license to practice medicine unless he complies with all of the statutory prerequisites ... As we understand, the plaintiffs can claim no right to practice medicine as that practice is engaged in by medical doctors and surgeons. The question is whether they can be constitutionally excluded from the practice of chiropractic in Louisiana.

*England*, 263 F.2d at 664–65.

In this case, the denturist Plaintiffs do claim the right, by virtue of education, experience and skill, to practice the denture supplying portion of dentistry as that practice is engaged in by licensed, medically trained dentists. The question here is whether denturists can be constitutionally excluded from the practice of dentistry (or a portion thereof) in Mississippi. The Plaintiffs do not allege or argue that the statutory prohibition of the public practice of denturism prevents denturists from earning a living. What Mississippi's Dental Act is designed to do is to restrict denturists and dental lab technicians from measuring, constructing, fitting and repairing dental prosthetic devices directly for the public without the participation, direction, supervision and ultimate responsibility of persons licensed by the Dental Board to practice dentistry in Mississippi.

In the instant case, the dissents of Circuit Judge Wisdom to the *England* majority decisions are poignantly apposite. As Judge Wisdom noted in one of his dissents, it is so here:

> There is no discrimination in statutory standards applied to all candidates for a medical [(dentistry)] license. We cannot say that the state is acting arbitrarily or unreasonably if it finds a rational connection between the medical [ (dental) ] training at a reputable medical [ (dental) ] school and the practice of medicine [ (dentistry) ] ... If an exception is to be made for certain practitioners, such as for nurses or chiropodists or dentists, special legislation is necessary to protect the public.

*England*, 263 F.2d at 675 & 677, (Wisdom, J. dissenting).

Moreover, recent Fifth Circuit decisions have apparently eroded the "day in court" rationale of the *England* decisions. For example, in *Finch v. Mississippi State Medical Association, Inc.*, 594 F.2d 163 (5th Cir.1979), the United States District Court for the Southern District of Mississippi, Walter L. Nixon, Jr., United States District Judge, found lack of case or controversy and dismissed, *inter alia*, plaintiffs' fourteenth amendment challenge to

the statutory nomination and selection procedure for membership on the Mississippi State Board of Health wherein, *inter alia,* it was alleged that the Health Act, as administered, excluded licensed, black physicians on racial grounds. The Fifth Circuit upheld the lower court's summary dismissal of the constitutional challenge to the statutory selection process and, for authority, cited *Friedman v. Rogers,* 440 U.S. 1, 99 S.Ct. 887, 59 L.Ed.2d 100 (1979)[3].

This Court finds the following statement appropriate:

> The plaintiffs are in the wrong forum asking for the wrong relief from the wrong lawmaker. The plaintiffs' real complaint is that the legislature has not passed a law making a special exception for their benefit. Exceptions are a matter of legislative grace. It is not for us to supply the omission. The question before us is the limited one of the constitutionality of a particular statute: the reasonableness of educational requirements and other safeguards in light of the purpose of the statute. I do not see a federal court as having any right to challenge the purpose of a state law, *if* the purpose is lawful... It is not for us to say that the purpose should be broader ... [t]hat was not the law the Louisiana legislature passed.

*England,* 263 F.2d at 676 (Wisdom, J., dissenting).

Accordingly, this Court is of the opinion that even assuming the evidence Plaintiffs state they can prove is true, there are nevertheless no discernible circumstances upon which Plaintiffs can prevail on their constitutional challenges to the Mississippi Dental Act as pled in Count II of the Amended Complaint. In other words, this Court finds that it has no legislative power, as a part of the least democratic branch of government in the United States, to recognize and regulate the occupation called den-

turism. Neither does this Court have the power to grant to denturists a license to practice denturism which, as Plaintiffs argue, consists of a part of the practice of dentistry as that practice is legislatively defined and engaged in by medically trained and statutorily licensed and regulated dentists in Mississippi. If the denturists desire an exception to the Dental Act, then it is to the legislature that they have recourse—not to the federal courts.

In absence of any federal case or controversy for this Court to resolve respecting the Mississippi Dental Act, Counts I and II of the Amended Complaint should be dismissed, and the energy of this Court now is to be focused on the remaining counts of the Amended Complaint.

Plaintiffs characterize their claims in Counts III and IV of the Amended Complaint as presenting causes of action under 42 U.S.C. § 1983. The Court notes, however, that Counts III, IV and V of the Amended Complaint allege conspiratory actions by the various Defendants to deprive one or more of the Plaintiffs of their rights to equal protection of the laws, or of equal privileges and immunities under the laws. To the extent that Counts III, IV and V of the Amended Complaint may require analysis of the provisions of 42 U.S.C. § 1985(3),[4] the following discussion is appropriate.

The United States Supreme Court recently addressed conspiracies formed for the purposes of depriving persons of equal protection of the laws of or equal privileges and immunities under the laws in violation of § 1985(3) in *United Brotherhood of Carpenters and Joiners v. Scott,* 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). The Court noted that to state a cause for violation of § 1985, the plaintiffs must allege and prove: "(1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly,

---

**3.** In *Friedman,* a 3-judge panel convened and decided, without any indication in the recorded decisions—438 F.Supp. 428 (E.D.Tex.1977) and 440 U.S. 1, 99 S.Ct. 887, 59 L.Ed.2d 100 (1979)— of an evidentiary hearing on the merits, that the statutorily required make-up of the Texas Op-

tometry Board and the prohibition of certain advertising of commercial optometry were neither violative of the First or Fourteenth Amendments nor otherwise unconstitutional.

**4.** 42 U.S.C.A. § 1985(3).

any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Id.*, 463 U.S. at ——, 103 S.Ct. at 3355, 77 L.Ed.2d at 1054. *Citing Griffin v. Breckenridge*, 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798–99, 29 L.Ed.2d 338 (1971).

The Court has interpreted § 1985 to apply to deprivations of equal protection or equal privileges and immunities provided there is some racial or other "class-based" invidiously discriminatory animus behind the conspirators' actions. *Griffin v. Breckenridge*, 403 U.S. at 102, 91 S.Ct. at 1798. In *Carpenters* the plaintiffs were non-union employees who were beaten by union employees. The plaintiffs sued the various unions for conspiring to deny them their First Amendment rights. The United States Court of Appeals for the Fifth Circuit held that § 1985 reached conspiracies either motivated by political or racial bias. The Supreme Court reversed and stated

In the first place, it is a close question whether § 1985(3) was intended to reach any class-based animus other than animus against Negroes and those who championed their cause, most notably Republicans.... The predominate purpose of § 1985(3) was to combat the prevalent animus against Negroes and their supporters. The latter included Republicans generally, as well as others, such as Northerners who came South with sympathetic views toward the Negro. Although we have examined with some care the legislative history that has been marshalled in support of the position that Congress meant to forbid wholly non-racial, but politically motivated conspiracies, we find difficult the question whether § 1985(3) provided a remedy for every concerted effort by one political group to nullify the influence of or do other injury to a competing group by use of otherwise unlawful means. To accede to that view would go far toward making the federal courts, by virtue of § 1985(3),

the monitors of campaign tactics in both state and federal elections, a role that the court should not be quick to assume. If respondents' submission were accepted, the proscription of § 1985(3) would arguably reach the claim that a political party has interfered with the freedom of speech of another political party by encouraging the heckling of his rival's speakers and the disruption of the rival's meeting.

*United Brotherhood of Carpenters and Joiners v. Scott*, 463 U.S. at ——, 103 S.Ct. at 3359, 77 L.Ed.2d at 1059.

The court concluded that Section 1985 did not reach conspiracies motivated by economic or commercial animus. Said the Court:

We thus cannot construe § 1985(3) to reach conspiracies motivated by economic or commercial animus... Moreover, if anti-union, and anti-nonunion, or anti-employer biases represent the kinds of animus that trigger § 1985(3), there would be little basis for concluding that the statute did not provide a cause of action in a variety of other situations where one economic group is pitted against another, each having the intent of injuring or destroying the economic health of the other. We think that such a construction of the statute, which is at best only arguable and surely not compelled by either its language or legislative history, should be eschewed and that group actions generally resting on economic motivations should be deemed beyond the reach of § 1985(3). Economic and commercial conflicts, we think, are best dealt with by statutes, federal or state, specifically addressed to such problems, as well as by the general law proscribing injuries to persons and property.

*Id.*, 463 U.S. at —— – ——, 103 S.Ct. at 3360–61, 77 L.Ed.2d at 1060–61.

The Plaintiffs, Denturists and dental laboratory technicians, are analogous to the nonunion employees in *Carpenter*. They simply have no § 1985 cause of action.

Finally, as Plaintiffs admit in their written arguments, "[i]n large part, Plaintiff's allegations in Counts III and IV rest upon this Court's decision regarding Count II of Plaintiffs' [Amended] Complaint." This Court has determined that Count II of the Amended Complaint states no claim cognizable by federal courts, and that Plaintiffs' constitutional challenge to the prohibition of the public practice of denturism cannot be sustained under any set of circumstances discernible from the pleadings or other matters submitted to the Court by Plaintiffs in this regard. There is no allegation of any overt act on the part of the Dental Board or of any other named Defendant which constitutes an act both under color of state law and which deprived any of the Defendants of equal protection of the laws or of equal privileges and immunities. All that is alleged and competently shown by Plaintiffs' affidavits and exhibits is that the Dental Board and some of its members lawfully and with probable cause to suspect illegal activity on the part of the complaining Plaintiffs investigated violations of, and sought to enforce compliance with, the provisions of the Dental Act. With regard to Counts III and IV of the Amended Complaint, there are no allegations of any specific activity by any Defendant which has allegedly deprived any Plaintiff of any constitutionally or otherwise federally protected right or guaranteed freedom or right. However, each Plaintiff submitted his affidavit in opposition to Defendants' Motion for Summary Judgment. This Court's analysis of those affidavits and exhibits is set forth in the margin.[5] In Count V, Plaintiff Rayborn alleges certain other activities directed against him in violation of 42 U.S.C. § 1985. Such alleged activities include the investigation of Plaintiff Rayborn by the Defendants resulting in the issuance of an injunction against Plaintiff Rayborn from illegally practicing dentistry and a proceeding whereby Senator Rayborn was held in contempt of said injunction. This Court has previously stated that Plaintiffs have no Section 1985 cause of action. Nevertheless, the actions of the various named Defendants which are either alleged or sworn to in Plaintiffs affidavits, were actions required of the various Defendants by State law.[6]

5. Excluding from the affidavits submitted by the various Plaintiffs such opinion, hearsay, speculation, and otherwise incompetent or inadmissible statements, the Plaintiffs' affidavits establish only the following:

Affidavit of Plaintiff Rayborn: While Defendant Stribling was a licensed Mississippi dentist but prior to the time that he became a member of the Dental Board, he hired a person to obtain a set of dentures directly from Rayborn. The Dental Board reimbursed Stribling for the cost of the dentures which Rayborn had illegally manufactured and delivered to the person. Stribling later told Rayborn to leave the state and that Rayborn was being boycotted. The Dental Board charged Rayborn's wife (not a party to this action) with illegal practice of dentistry, and Stribling told Rayborn that "they were going to teach me how to play." A private investigator observed Rayborn while Rayborn was in the State Capital Building. Stribling told Rayborn that if certain dental regulations were enacted then "they would take care of" Rayborn.

Affidavit of Plaintiff Ross: A private investigator hired by the Dental Board discovered that Plaintiff, James A. Ross, and his father were associated with a licensed dentist and were dealing directly with patients, but the Dental Board took no action. Plaintiff Ross, after his father's retirement, moved his business to another city, worked as a denturist directly for the public, disassociating himself from supervision by licensed dentists, and experienced difficulties in attracting dental supply salesmen to call on him. Thereafter, the Dental Board again investigated him and "attempted to prosecute" him by notifying a prosecuting officer of the illegal activity.

Affidavit of Plaintiff Pinto: Pinto, after opening his doors directly to the public as a denturist, was investigated by a hireling of the Dental Board "who threatened" Pinto.

Affidavit of Plaintiff Collier: Collier worked as a dental laboratory technician for Plaintiff Rayborn. When Rayborn closed his denturist business, Collier lost his job.

Affidavit of Plaintiff Greer: Greer, a dental laboratory technician, joined certain denturists associations. Greer lost a dental laboratory job near McComb, and he later lost referral work from a dentist.

6. Miss.Code Ann. § 73–9–45 (Supp.1983), provides as follows:

Each member of the board and each licensed and practicing dentist and dental hygienist is constituted an agent who shall investigate all complaints and all alleged cases of noncompliance with, or violation of the provisions of

Since this Court has determined that the statutory prohibition of the public practice of denturism as contained in the Dental Act does no violence to the Plaintiffs' constitutionally guaranteed and protected rights, the lawful enforcement of the statutory enactment likewise presents no cause of action cognizable under 42 U.S.C. § 1983 or 42 U.S.C. § 1985(3). This Court is of the opinion, based upon the pleadings, evidence presented by the parties in support of, and in opposition to, the Defendants' Rule 56 Motion, and the numerous, extensive written arguments of counsel for both sides in this conflict, that there are no discernible circumstances upon which any of the Plaintiffs may prevail against any of the Defendants for any of the relief sought in the Amended Complaint. Accordingly, there being no case or controversy presented by the Amended Complaint which is cognizable in federal courts, judgment should be granted in favor of all Defendants against all Plaintiffs on all legal theories and claims for relief advanced in the Amended Complaint.

A separate judgment for the Defendants is being entered in this action as required by Rule 58 of the Federal Rules of Civil Procedure to reflect the opinion with this Court.

this chapter and shall bring all such matters to the notice of the proper prosecuting officers, where it appears probable that an offense has been committed.