Opinion by Justice Contreras
Appellant, Joseph Andrew DiRuzzo, was convicted on sixteen counts of the illegal practice of medicine, each a third degree felony. See TEX. OCC. CODE ANN. § 165.152 (West, Westlaw through 2017 1st C.S.). Punishment was assessed at four years' imprisonment and a $1,500 fine for each count, and the trial court ordered the prison terms to run concurrently. Appellant argues that: (1) the trial court lacked subject matter jurisdiction because the indictment charged only misdemeanors; (2) the convictions violate his constitutional rights to freedom of association, freedom of choice, and privacy; (3) the evidence was legally insufficient to support his conviction; and (4) trial counsel provided ineffective assistance. We affirm as modified.
I. BACKGROUND
A Victoria County grand jury returned an indictment on May 2, 2014, alleging that appellant, a/k/a Joe Delarosa and d/b/a Society for the Study of Cell and Molecular Biology (SSCMB), and Tim McMahan intentionally or knowingly practiced medicine in the state of Texas in violation of subtitle B, title 3 of the occupations code, on sixteen separate occasions between April 12 and October 22, 2013. See id. The sixteen counts each alleged that appellant and McMahan violated the statute "by providing treatment including withdrawal of blood and fluids and injections purported to be 'stem cells' in treatment of medical conditions while not holding a license to practice medicine." The State later filed an amended indictment on October 3, 2014, replacing the words "medical conditions" with the names of two alleged victims, Nelson and Estelle Janssen.
Nelson Janssen testified at trial that he suffers from diabetes and cellulitis, and that his wife, Estelle, suffered from cancer and is now deceased. Nelson met with appellant, a licensed chiropractor, and agreed to undergo a procedure under which appellant would draw his blood and, about one week later, inject him with "stem cells" derived from his blood. In order to undergo the procedure, Nelson was required to sign a contract and pay a $10 lifetime membership fee to join appellant's organization, SSCMB.
A copy of the standard SSCMB contract was entered into evidence. It provided in part that SSCMB is "a private membership association under common law whose members seek to help each other achieve better health and live longer with the best possible quality of life." The contract set forth a fee schedule under which an initial consultation was $1,000, the "initial procedure" was $1,500 for three "tubes," and follow-up visits are $500 per "tube," with *304 three tubes recommended for members fifty years of age and older.
The contract stated: "Most members of the society report that they experience a noticeable improvement in their health with 5 to 10 visits, but no guarantee of health improvement is hereby made, either expressed or implied, nor is this an offer to treat cure, prevent, or diagnose any disease." The contract also contained the following disclaimers:
The [SSCMB] does not treat, cure, diagnose or prevent any disease, disease state, or any pathologic condition, nor is the practice of medicine conducted at the facilities of the society.
No treatment, treatment plan or plans, or treatment protocol for any disease or pathologic condition is created, administered, delivered, or conducted with the approval of the society, nor will any treatment plan. program, or protocol ever be made by a duly authorized representative of the Society.
It is the assertion of the Society that the body can heal itself, in most cases, given proper support.
Members or the society who have any disease or pathology must in good conscious [sic] and in their best interest for self-preservation retain a licensed physician and/or physicians, to include appropriate specialists, and the society and its members have no authority to advise anyone to delay, refuse, or modify the recommendations of said physician or physicians, nor will such advice ever be made or authorized to be made by the society, or any duly appointed representative thereof.
Additionally, the contract set forth the organization's "Articles of Association" and contained the following "Memorandum of Understanding":
I hereby acknowledge acceptance of the above Articles of Association. I also acknowledge my understanding those fellow Association members that provide diagnosis, procedures, care and related activities, do so in the capacity of a fellow member. In this relationship between fellow members, they do not act in the capacity of a licensed health care provider.
I further understand that within the SSCMB Association there is never a patient-practitioner, or a patient-physician relationship. Rather, there are only individual membership contracts that provide for member-to-member relationships within the Association.
In addition, I hereby freely choose to reject any legal status as a patient within the present medical health care system, and adopt the legal status of private member of the SSCMB Association. I further understand that it is entirely my own responsibility to consider, accept and adopt any advice, recommendations and services offered to me by my fellow members as to the efficacy, risks and desirability of same.
Accordingly, I acknowledge that any and all assistance given to me by fellow members is provided through my exercise of my free decision in an exercise of my rights that are made for individual members, agents and employees from any unintended adverse experiences and any liability, except for instances of clear and present danger that result from substantial maliciousness or evil acts as may be determined by due process of the SSCMB Association as stated and defined by the United States Supreme Court.
I hereby accept that any and all complaints or grievances against the SSCMB Association, its individual members, agents and employees will be resolved outside of the jurisdictional and authority of federal and state agencies *305 and authorities. A SSCMB Association committee established to insure fairness and integrity will settle all rights of complaints and grievances.
....
l hereby accept that all information about activities within the SSCMB Association are confidential, and agree not to disclose such information to federal, state or local agencies or jurisdictions without prior Association approval from a spokesperson (ASP). Further, I understand that members of the Association are not protected by malpractice insurance, and therefore agree to not pursue civil action for malpractice against a follow member of the Association. Any such malpractice action is considered as a grievance and is handled within the Association, as described above.
I hereby agree to join the SSCMB as a private medical membership association under the legal provisions of United States common law. I enter into this Agreement of my own free will, or on behalf of my dependent, without pressure or undue influence, and without any promise of specific beneficial results.
I affirm that I do not represent any federal or state agency whose purpose is to monitor, supervise or regulate the practice of medicine, understanding that such membership disqualifies me from SSCMB Association membership.
Nelson testified he paid $1,500 to SSCMB for each treatment consisting of three tubes, and copies of his checks were entered into evidence. He stated that appellant never told him he was a doctor and that he did not think appellant was a doctor. Nelson testified that he knew he was not getting medical treatment, but he believed appellant's stem cell treatments were helpful and probably added five or six years to his life.
Several other witnesses also testified that they underwent appellant's stem cell procedures and were satisfied with the results. They testified that appellant did not tell them he was a physician or that he was making any sort of diagnosis.
The jury found appellant guilty and McMahan not guilty on all sixteen counts. At the punishment phase, appellant testified that he believed he had the constitutional right to do the activities for which he had been found guilty. The jury assessed punishment as set forth above, the trial court rendered judgment on the verdict, and this appeal followed.
II. DISCUSSION
A. Subject Matter Jurisdiction
By his first issue, appellant contends that the trial court lacked subject matter jurisdiction because the indictments alleged only misdemeanor offenses. See TEX. CODE CRIM. PROC. ANN. art. 4.05 (West, Westlaw through 2017 1st C.S.) (setting forth criminal jurisdiction of district courts). The indictment alleged in sixteen separate counts that appellant and McMahan intentionally or knowingly practiced medicine without a license, citing sections 155.001 and 165.152 of the occupations code. See TEX. OCC. CODE ANN. § 155.001 (West, Westlaw through 2017 1st C.S.); id. § 165.152. Appellant and McMahan jointly moved to quash the indictment on grounds that it alleged only misdemeanors, but the trial court denied the motion.
Subtitle B of title 3 of the occupations code, known as the Medical Practice Act (the Act), governs the practice of medicine in Texas. See id. §§ 151.001-170.003 (West, Westlaw through 2017 C.S.). Section 155.001 of the Act provides that "[a] person may not practice medicine in this state unless the person holds a license issued under this subtitle." Id. § 155.001. Criminal penalties for violating provisions *306 of the Act are set forth in subchapter D of chapter 165. See id. §§ 165.151-.160. The relevant sections of that subchapter read as follows:
Sec. 165.151. GENERAL CRIMINAL PENALTY.
(a) A person commits an offense if the person violates this subtitle or a rule of the [Texas Medical Board].
(b) If another penalty is not specified for the offense, an offense under this section is a Class A misdemeanor.
Sec. 165.152. PRACTICING MEDICINE IN VIOLATION OF SUBTITLE.
(a) A person commits an offense if the person practices medicine in this state in violation of this subtitle.
(b) Each day a violation continues constitutes a separate offense.
(c) An offense under Subsection (a) is a felony of the third degree.
(d) On final conviction of an offense under this section, a person forfeits all rights and privileges conferred by virtue of a license issued under this subtitle.
Sec. 165.153. CRIMINAL PENALTIES FOR ADDITIONAL HARM.
(a) A person commits an offense if the person practices medicine without a license or permit and causes another person:
(1) physical or psychological harm; or
(2) financial harm.
(b) An offense under Subsection (a)(1) is a felony of the third degree.
(c) An offense under Subsection (a)(2) is a state jail felony.
Id. § 165.151-.153.
We review issues of statutory construction de novo. Crosstex Energy Servs., L.P. v. Pro Plus, Inc. , 430 S.W.3d 384, 389 (Tex. 2014) ; Tex. Lottery Comm'n v. First State Bank of DeQueen , 325 S.W.3d 628, 635 (Tex. 2010). In construing statutes our primary objective is to give effect to the Legislature's intent. Crosstex , 430 S.W.3d at 389. We rely on the plain meaning of the text as expressing legislative intent unless a different meaning is supplied by legislative definition or is apparent from the context, or the plain meaning leads to absurd results. Id. ; City of Rockwall v. Hughes , 246 S.W.3d 621, 625-26 (Tex. 2008). In determining plain meaning, words and phrases must be read in context and construed according to the rules of grammar and usage. Sanchez v. State , 995 S.W.2d 677, 683 (Tex. Crim. App. 1999) (citing TEX. GOV'T CODE ANN. § 311.011(a) (West, Westlaw through 2017 1st C.S.) ). We presume that every word has been used for a purpose and that each word, phrase, clause, and sentence should be given effect if reasonably possible. Arteaga v. State , 521 S.W.3d 329, 334 (Tex. Crim. App. 2017). If the statutory language is plain, we will effectuate that plain language without resort to extra-textual sources. Cary v. State , 507 S.W.3d 750, 756 (Tex. Crim. App. 2016). However, if an interpretation of the plain language would lead to absurd results or the language is ambiguous, then we may review extra-textual resources to discern the legislative intent underlying the statutory language. Id.
Appellant, who is not a licensed physician, argues that section 165.152 applies only to licensed physicians. He further argues that, because the indictment did not allege that he caused another person physical, psychological, or financial harm, it did not allege an offense under section 165.153. Therefore, according to appellant, the indictment could only have alleged misdemeanor offenses under section 165.151.[1]
*307 To support his argument that section 165.152 applies only to licensed physicians, appellant notes that conviction under that section results in the loss of "all rights and privileges conferred by virtue of a license issued" under the Act, and he argues that this provision would be meaningless if the statute applied to non-physicians. See id. He further notes that section 165.153 specifically applies to the practice of medicine without a license, whereas section 165.152 applies more generally-to the practice of medicine in violation of the Act-and he cites authority providing that, when two statutes address the same purpose or object, and one deals with the subject in general terms and the other in a more detailed way, we must presume that the Legislature intended for the more specific statute to control. See Juarez v. State , 308 S.W.3d 398, 405 (Tex. Crim. App. 2010) ; Azeez v. State , 248 S.W.3d 182, 191-92 (Tex. Crim. App. 2008) (noting that "statutes that deal with the same general subject, have the same general purpose, or relate to the same person or thing or class of persons or things, are considered to be in pari materia" and that "[i]n order to arrive at a proper construction of a statute, and determine the exact legislative intent, all acts and parts of acts in pari materia will, therefore, be taken, read, and construed together, each enactment in reference to the other, as though they were parts of one and the same law"); see also TEX. GOV'T CODE ANN. § 311.026 (West, Westlaw through 2017 1st C.S.) ("(a) If a general provision conflicts with a special or local provision, the provisions shall be construed, if possible, so that effect is given to both. (b) If the conflict between the general provision and the special or local provision is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later enactment and the manifest intent is that the general provision prevail.").
Further, appellant contends that construing section 165.152 so that it encompasses the practice of medicine without a license would lead to an absurd result that the Legislature could not have intended. See Sanchez , 995 S.W.2d at 683. In particular, he notes that section 165.153 explicitly covers the practice of medicine without a license, and while that section requires an additional showing of harm, it does not increase the applicable penalty relative to section 165.152-rather, it either provides for the same grade of offense as that provided in section 165.152 (if physical or psychological harm is shown) or actually reduces the grade of the offense to a state jail felony (if financial harm is shown). See TEX. OCC. CODE ANN. § 165.153. He argues that the existence of two statutes proscribing the same behavior-but with one statute simultaneously requiring an additional harm element while potentially reducing the grade of the offense-would constitute an absurd result.
We disagree with appellant's arguments. The plain language of section 165.152 states that it is an offense for "[a] person" to practice medicine "in violation of" the Act. See id. § 165.152(a). There is nothing *308 in section 165.152 that explicitly or implicitly limits its applicability to licensed physicians, and there is no conflict between section 165.152 and any other part of the Act. Subsection (d) of section 165.152, which states that conviction under that section results in a loss of license, is not meaningless because the statute applies to anyone who practices medicine in violation of the Act, including license holders. And section 165.152 covers the practice of medicine without a license because that is one of the many ways that a person could practice medicine in violation of the Act. See id. § 155.001 ("A person may not practice medicine in this state unless the person holds a license issued under this subtitle.").
The State argues that the legislative history of section 165.152 supports this conclusion. When the occupations code was first codified in 1999, section 165.152 provided that the offense of practicing medicine in violation of the Act was generally a Class A misdemeanor, except that it was a third degree felony if the defendant had previously been convicted of that offense. See Act of May 10, 1999, 76th Leg., R.S., ch. 388, § 1, 1999 TEX. SESS. LAW SERV. ch. 388 (H.B. 3155) (amended 2003). The State argues that it would have been impossible to charge a third degree felony under this version of the statute if it applied only to licensed physicians, because once a person is convicted of the offense, that person automatically forfeits his or her license. See TEX. OCC. CODE ANN. § 165.152(d). The State further argues that there is nothing about the 2003 amendment, which enacted the statute in its current form, indicating that the Legislature intended to restrict its applicability.
The State's argument overlooks the theoretical possibility that a person could be convicted, stripped of their license pursuant to the statute, and then become re-licensed and commit the offense again. In that way, even if section 165.152 applied only to licensed physicians, it would not have been impossible for the State to charge a third degree felony under the repeat offender provision in the 1999 version of the statute.
Nevertheless, the history of section 165.152 is illuminating in another way. Specifically, it is noteworthy that the offense was generally a misdemeanor under the original version of the statute, because it helps to explain why the Legislature enacted section 165.153. As noted, section 165.153, also codified in 1999, provides that the offense of practicing medicine without a license is a felony if physical, psychological, or financial harm is shown. See id. § 165.153. At the time of original enactment, the logic of the statutory scheme was clear-the basic offense was described in section 165.152, and section 165.153 provided for enhanced penalties in situations where harm is shown. Although section 165.153 specifically contemplated the practice of medicine without a license, there was no reason at that time to believe that the former version of section 165.152 applied only to licensed physicians. In 2003, the Legislature amended section 165.152 to make the basic offense a third degree felony. See Act of June 10, 2003, 78th Leg., R.S., ch. 202, § 37, 2003 TEX. SESS. LAW SERV. ch. 202 (S.B. 104). We cannot explain why the Legislature did not concurrently repeal section 165.153 or amend it to provide for increased penalties in harm cases-but we cannot conclude that, by declining to do so, the Legislature intended to create a new restriction limiting the applicability of 165.152 only to licensed physicians.
It is true, as appellant contends, that this construction essentially renders section 165.153 superfluous. See Crosstex , 430 S.W.3d at 389 ("We must not interpret the *309 statute in a manner that renders any part of the statute meaningless or superfluous."). Under this construction, there is no conceivable scenario under which the State would choose to charge a person under section 165.153, since that section addresses behavior (practicing medicine without a license) which is encompassed by section 165.152, and yet section 165.153 requires an additional harm element, but does not provide for an increased penalty relative to section 165.152. At oral argument, the State's counsel suggested that the Legislature "implicitly repealed" section 165.153 by its 2003 amendment to section 165.152. We are unaware of any authority allowing us to construe an act of the Legislature as an "implicit repeal" of a statute which, explicitly, is left intact. But we agree with the State that the Legislature's decision to render section 165.153 superfluous does not produce an absurd result which could not have been intended.[2]
Because there is no conflict between the statutes, and because application of the statutes' plain meaning does not result in an absurd outcome which the Legislature could not have intended, we apply that plain meaning. See ids="6959870" index="17" url="https://cite.case.law/sw3d/430/384/#p389">id. ; Sanchez , 995 S.W.2d at 683. Doing so, we conclude that the indictment sufficiently alleged third-degree felony offenses under section 165.152, thereby invoking the subject-matter jurisdiction of the trial court. Appellant's first issue is overruled.
B. Constitutional Issues
By his second issue, appellant contends that his conviction violated his, SSCMB's, and SSCMB's members' constitutional rights to freedom of association, freedom of choice, and privacy.[3] See U.S. CONST. amends. I, V, XIV. He made this argument in several motions to quash the indictment which were denied by the trial court.
Appellant argues that SSCMB was a "members only" association "intended to be set up under the authority and protection of the 1st and 14th Amendments of the United States Constitution." He cites case law establishing that "the State cannot deny to any individual the right to exercise a reasonable choice in the method of treatment of his ills, nor the correlative right of practitioners to engage in the practice of a useful profession." England v. La. State Bd. of Med. Examiners , 259 F.2d 626, 627 (5th Cir. 1958). Appellant further argues that the activities for which he was prosecuted are protected by the freedom to contract, see Phila. Indem. Ins. Co. v. White , 490 S.W.3d 468, 471 (Tex. 2016) ("Absent compelling reasons, courts must respect and enforce the terms of a contract the parties have freely and voluntarily entered."), and the right to privacy under the Texas and federal Constitutions. See Tex. State Emps. Union v. Tex. Dep't of Mental Health & Mental Retardation , 746 S.W.2d 203, 205 (Tex. 1987) ("[T]he Texas Constitution protects personal privacy from unreasonable intrusion. This right to privacy should yield only when the government can demonstrate that an intrusion is reasonably warranted for the achievement of a compelling governmental objective that can be achieved by no less intrusive, more reasonable means."); see also Andrews v. Ballard , 498 F.Supp. 1038, 1048 (S.D. Tex. 1980) ("[T]he decision to obtain or reject medical treatment ... is both personal and important enough *310 to be encompassed by the right of privacy."). Appellant also cites NAACP v. Button , in which the United States Supreme Court held unconstitutional, as violative of the rights to free expression and association, a Virginia statute banning the NAACP's practice of providing forms to victims of discrimination for them to request legal representation. 371 U.S. 415, 437, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963). The Button Court noted that "[f]ree trade in ideas means free trade in the opportunity to persuade to action, not merely to describe facts" and it held that the State could not constitutionally prohibit "advocating lawful means of vindicating legal rights." Id.
In response, the State notes that the United States Supreme Court has long recognized that state regulation of medical practice, when neither arbitrary or capricious, does not violate due process rights. In the 1889 case of Dent v. West Virginia , the Court explained why:
It is undoubtedly the right of every citizen of the United States to follow any lawful calling, business, or profession he may choose, subject only to such restrictions as are imposed upon all persons of like age, sex, and condition. This right may in many respects be considered as a distinguishing feature of our republican institutions. Here all vocations are open to every one on like conditions. All may be pursued as sources of livelihood, some requiring years of study and great learning for their successful prosecution. The interest, or, as it is sometimes termed, the 'estate,' acquired in them-that is, the right to continue their prosecution-is often of great value to the possessors, and cannot be arbitrarily taken from them, any more than their real or personal property can be thus taken. But there is no arbitrary deprivation of such right where its exercise is not permitted because of a failure to comply with conditions imposed by the state for the protection of society. The power of the state to provide for the general welfare of its people authorizes it to prescribe all such regulations as in its judgment will secure or tend to secure them against the consequences of ignorance and incapacity, as well as of deception and fraud. As one means to this end it has been the practice of different states, from time immemorial, to exact in many pursuits a certain degree of skill and learning upon which the community may confidently rely; their possession being generally ascertained upon an examination of parties by competent persons, or inferred from a certificate to them in the form of a diploma or license from an institution established for instruction on the subjects, scientific and otherwise, with which such pursuits have to deal. The nature and extent of the qualifications required must depend primarily upon the judgment of the state as to their necessity. If they are appropriate to the calling or profession, and attainable by reasonable study or application, no objection to their validity can be raised because of their stringency or difficulty. It is only when they have no relation to such calling or profession, or are unattainable by such reasonable study and application, that they can operate to deprive one of his right to pursue a lawful vocation.
Few professions require more careful preparation by one who seeks to enter it than that of medicine. It has to deal with all those subtle and mysterious influences upon which health and life depend, and requires not only a knowledge of the properties of vegetable and mineral substances, but of the human body in all its complicated parts, and their relation to each other, as well as their influence upon the mind. The physician must be *311 able to detect readily the presence of disease, and prescribe appropriate remedies for its removal. Every one may have occasion to consult him, but comparatively few can judge of the qualifications of learning and skill which he possesses. Reliance must be placed upon the assurance given by his license, issued by an authority competent to judge in that respect, that he possesses the requisite qualifications. Due consideration, therefore, for the protection of society may well induce the state to exclude from practice those who have not such a license, or who are found upon examination not to be fully qualified.... We perceive nothing in the statute which indicates an intention of the legislature to deprive one of any of his rights. No one has a right to practice medicine without having the necessary qualifications of learning and skill; and the statute only requires that whoever assumes, by offering to the community his services as a physician, that he possesses such learning and skill, shall present evidence of it by a certificate or license from a body designated by the state as competent to judge of his qualifications.
129 U.S. 114, 121-23, 9 S.Ct. 231, 32 L.Ed. 623 (1889). Moreover, even during the Lochner era, when business regulations were routinely struck down on grounds of substantive due process and the freedom to contract, the Court nevertheless affirmed that "there is no right to practice medicine which is not subordinate to the police power of the states." Lambert v. Yellowley , 272 U.S. 581, 596, 47 S.Ct. 210, 71 L.Ed. 422 (1926) (rejecting physician's claim that the National Prohibition Act "control[led] medical practice in the states" and was "beyond the power of the federal government").
We agree with the State that the licensing requirements of the Act do not infringe upon the constitutional rights of appellant, SSCMB, or its members. It is well established that the regulation of medical practice generally does not violate federal due process rights, see itation case-ids="1501305" index="33" url="https://cite.case.law/us/272/581/#p596">id. ; Dent , 129 U.S. at 121-23, 9 S.Ct. 231, and appellant does not argue that there is anything specifically about the Act that is arbitrary, capricious, or otherwise unreasonable. Instead, the Texas Constitution explicitly grants authority to the Legislature to make laws prescribing the qualifications of practitioners of medicine. See TEX. CONST. art. XVI, § 31. The cases cited by appellant may show that the decision by individual patients to choose a particular course of treatment is constitutionally protected, but they do not provide support for the claim that those rights have been violated in this case. See England , 259 F.2d at 627 (acknowledging, in suit brought by chiropractors alleging that state medical regulations were unconstitutional, that "the state may regulate, within reasonable bounds, the practice of chiropractic for the protection of the public health"). Appellant's prosecution was not based on his establishment of SSCMB or his association with its members; rather, it was based on his practicing medicine in violation of the Act. Unlike the law at issue in Button , the Act does not criminalize the advocacy of lawful means to assert legal rights. Cf. 371 U.S. at 437, 83 S.Ct. 328. And to the extent that the Act does encroach upon any party's rights to freedom of contract and to privacy, those encroachments are justified by the compelling state interest in protecting the health, safety, and welfare of its people. See Dent , 129 U.S. at 121-23, 9 S.Ct. 231.
We conclude that appellant's conviction did not violate the constitutional rights of appellant, SSCMB, or its members. Appellant's second issue is overruled.
C. Evidentiary Sufficiency
By his third issue, appellant contends that the evidence was insufficient to establish that he practiced medicine.
*312 In reviewing sufficiency of the evidence to support a conviction, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Hacker v. State , 389 S.W.3d 860, 865 (Tex. Crim. App. 2013) ; see Brooks v. State , 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.) (citing Jackson v. Virginia , 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ). We measure sufficiency by the elements of the offense as defined by a hypothetically correct jury charge. Villarreal v. State , 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) ; Malik v. State , 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). "Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." Villarreal , 286 S.W.3d at 327 ; Malik , 953 S.W.2d at 240.
Here, a hypothetically correct charge consistent with the indictment would instruct the jury to find appellant guilty of the charged offenses if he intentionally or knowingly practiced medicine in violation of subtitle B, title 3 of the Texas Occupations Code "by providing treatment including withdrawal of blood and fluids and injections purported to be 'stem cells' in treatment of Nelson Janssen and Estelle Janssen while not holding a license to practice medicine." See TEX. OCC. CODE ANN. § 165.152. Consistent with the statute, the jury charge defined "practicing medicine" as:
the diagnosis, treatment, or offer to treat a mental or physical disease or disorder or a physical deformity or injury by any system or method, or the attempt to effect cures of those conditions, by a person who:
(A) publicly professes to be a physician or surgeon; or
(B) directly or indirectly charges money or other compensation for those services.
See id. § 151.002(13) (West, Westlaw through 2017 1st C.S.).
Appellant argues that merely drawing blood and giving injections does not constitute the practice of medicine. He points to trial testimony from the supervising attorney at the Texas Medical Board (the Board) establishing that, even though the Board is charged with regulating the practice of medicine in Texas, it does not regulate phlebotomists that draw blood or pharmacy technicians that administer injections. He further notes that blood draws performed by police officers in non-medical settings are not considered by the Texas Court of Criminal Appeals to be per se unreasonable under the Fourth Amendment. See State v. Johnston , 336 S.W.3d 649, 662 (Tex. Crim. App. 2011).
We find that the evidence was sufficient to establish that appellant engaged in the practice of medicine. Nelson Janssen testified that he decided to meet with appellant after a friend advised him to get "help" for fluid build-up and discoloration in his legs due to diabetes. He agreed that he was "hoping to improve [his] physical condition" through appellant's treatments. According to Nelson, he advised his wife to get treatment from appellant for her ovarian cancer. There is no dispute that appellant charged money for those services. Although the drawing of blood and the administration of injections need not always constitute the practice of medicine, the statute compels us to conclude that those actions do constitute the practice of medicine if, as here, they are done in exchange for compensation and with the intent to alleviate a physical disorder such as diabetes *313 or cancer. See TEX. OCC. CODE ANN. § 151.002(13). From Janssen's testimony, a rational juror could have concluded beyond a reasonable doubt that appellant engaged in the practice of medicine as defined by the statute. Appellant's third issue is overruled.
D. Ineffective Assistance of Counsel
By his fourth and final issue, appellant argues that his trial counsel was ineffective, depriving him of his Sixth Amendment right to counsel, "by failing to establish through the testimony of the SSCMB's members their values and beliefs in order to properly argue freedom of intimate or expressive association."
To obtain a reversal of a conviction on grounds of ineffective assistance of counsel, a defendant must show that: (1) counsel's performance fell below an objective standard of reasonableness and (2) counsel's deficient performance prejudiced the defense, resulting in an unreliable or fundamentally unfair outcome of the proceeding. Davis v. State , 278 S.W.3d 346, 352 (Tex. Crim. App. 2009) (citing Strickland v. Washington , 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ). "Deficient performance means that 'counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.' " Ex parte Napper , 322 S.W.3d 202, 246 (Tex. Crim. App. 2010) (quoting Strickland , 466 U.S. at 687, 104 S.Ct. 2052 ). "The prejudice prong of Strickland requires showing 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " Id. at 248 (quoting Strickland , 466 U.S. at 694, 104 S.Ct. 2052 ).
The burden is on appellant to prove ineffective assistance of counsel by a preponderance of the evidence. Thompson v. State , 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Appellant must overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and that his actions could be considered sound trial strategy. See Strickland , 466 U.S. at 689, 104 S.Ct. 2052 ; Andrews v. State , 159 S.W.3d 98, 101 (Tex. Crim. App. 2005) (noting that "we commonly assume a strategic motive if any can be imagined and find counsel's performance deficient only if the conduct was so outrageous that no competent attorney would have engaged in it"). A reviewing court will not second-guess legitimate tactical decisions made by trial counsel. State v. Morales , 253 S.W.3d 686, 696 (Tex. Crim. App. 2008) ("[U]nless there is a record sufficient to demonstrate that counsel's conduct was not the product of a strategic or tactical decision, a reviewing court should presume that trial counsel's performance was constitutionally adequate...."). Counsel's effectiveness is judged by the totality of the representation, not by isolated acts or omissions. Thompson , 9 S.W.3d at 813. An allegation of ineffectiveness must be firmly founded in the record. See Mata v. State , 226 S.W.3d 425, 430 (Tex. Crim. App. 2007) (noting that "a reviewing court on direct appeal will rarely be able to fairly evaluate the merits of an ineffective-assistance claim, because the record on direct appeal is usually undeveloped and inadequately reflective of the reasons for defense counsel's actions at trial.").
Appellant argues that his trial counsel performed deficiently by failing to ask him any questions "pertinent to establishing a record to argue for protection under the First Amendment as an intimate association." See Roberts v. U.S. Jaycees , 468 U.S. 609, 617-18, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984) (noting that "choices to enter into and maintain certain intimate human relationships must be secured against undue *314 intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme"). He further complains that trial counsel "neglected to put forth testimony and develop a record to vindicate [SSCMB]'s right of expressive association." See ids="11339552" index="71" url="https://cite.case.law/us/468/609/#p617">id. at 622, 104 S.Ct. 3244 (noting that "implicit in the right to engage in activities protected by the First Amendment [is] a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends").
Appellant does not specify what additional questions he believes trial counsel should have asked, or what additional witnesses counsel should have called, in order to better develop his constitutional argument. He concedes that his witnesses, including Janssen, were able to "testif[y] to expressive activity." In any event, we have already overruled appellant's issue arguing that his conviction violates his freedom of association under the First Amendment. Moreover, the record does not indicate any reason for counsel's decisions.[4] On this record, we cannot conclude that appellant overcame the presumption that trial counsel's actions and inactions were within the wide range of reasonable professional assistance. See Strickland , 466 U.S. at 689, 104 S.Ct. 2052. We overrule appellant's fourth issue.
III. CONCLUSION
We note that the judgments on appeal each recite that the "statute for offense" is " § 155.001 & 165.153(a)(2)(b) [sic] Occupations Code." However, as noted, a third degree felony offense under section 165.153 requires a showing of physical or psychological harm, see TEX. OCC. CODE ANN. § 165.153(a)(2), and no such finding was made by the jury in this case. The offenses alleged in the indictment, proved at trial, and found by the jury were the practice of medicine in violation of the Act as set forth in section 165.152 of the occupations code. Accordingly, we modify the judgments to reflect that the statutes for offense are sections 155.001 and 165.152 of the occupations code. See Banks v. State , 708 S.W.2d 460, 461 (Tex. Crim. App. 1986) (holding that when an appellate court has the necessary data and evidence before it for modification, the judgment may be modified on appeal).
The trial court's judgments are affirmed as modified herein. See TEX. R. APP. P. 43.2(b).

In response, the State argues in part that, even if section 165.152 applies only to license holders, the trial court nevertheless had jurisdiction because: (1) section 165.152"unquestionably" describes a felony offense; (2) the indictment stated clearly that appellant was being charged under that section; and (3) though the indictment did not allege that appellant was a license holder, the failure of an indictment to allege an element of the offense is a substantive defect which is waived if not raised before trial. See Teal v. State , 230 S.W.3d 172, 181-82 (Tex. Crim. App. 2007) (finding that jurisdiction was properly vested in the trial court even though indictment omitted mens rea element elevating offense from misdemeanor to felony). We do not address this argument in light of our conclusion herein that section 165.152 does not apply only to license holders. See Tex. R. App. P. 47.1.

We urge the Legislature to revise these statutes to avoid further confusion.

The State does not dispute that appellant has standing to assert constitutional challenges on behalf of SSCMB or its members. We assume for purposes of this opinion that he does.

We note that "claims of ineffective assistance of counsel rejected due to lack of adequate information may be reconsidered on an application for a writ of habeas corpus." Lopez v. State , 343 S.W.3d 137, 143 (Tex. Crim. App. 2011).